# IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF MISSOURI
## WESTERN DIVISION

| | | |
|---|---|---|
| David Johnson, | ) | |
| individually and on behalf | ) | |
| of all others similarly situated, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 4:16-cv-00947 |
| | ) | |
| Corecivic, and | ) | |
| Securus Technologies, Inc. | ) | |
| Defendants. | ) | |
| | ) | |

## <u>PLAINTIFFS' CONSOLIDATED MOTION FOR CLASS CERTIFICATION AND SUGGESTIONS IN SUPPORT THEREOF</u>

i

Q. Can you think of any reason as you sit here today that there would be a reason to record attorney phone calls?

**A. A legitimate reason or**

Q. A legitimate reason.

**A. No.**

*Deposition of Corecivic Corporate Representative Warden Linda Thomas, April 20, 2018, p. 169:16-21*

Despite this, between 2011 and 2017, <u>a minimum of</u> 18,579 calls to 567 known attorneys were recorded.

# Table of Contents

INTRODUCTION ................................................................................................................ 1

FACTS IN SUPPORT OF PLAINTIFFS' MOTION .................................................... 3

*Calls to Attorneys appearing on the Special Master List* ....................................... 3

*Securus and Corecivic Call Logs Generally* ............................................................ 3

*Call Records to Numbers from Bar Directories Not Appearing on Special Master List* .............. 3

*Call Records related to Detainee and Attorney Requests for Privatization* ............ 4

*Call Records from Corecivic Privatization Reports* ................................................ 4

*Securus Privatization Reports* ................................................................................. 5

*Discovery Regarding Defendants' Practices and Policies Demonstrates that Attorney/Client Calls are Routinely, Systematically Recorded, without Adequately Informing Parties, and in Many Cases, Recording Long After Calls Should Not Have been Recorded.* .................. 6

*Internal Review of Recorded Phone Calls and Video* ............................................. 8

*Administrative Subpoenas and Informal Requests from Law Enforcement* ........... 8

*The Federal Public Defender and the 2011 Amendments to the Corecivic Contract with BOPT/USMS* ................................................................ 9

*Audio Admonitions of Recording of Phone Calls* .................................................. 10

*Court Orders re Non Recording of Phone Numbers* .............................................. 10

SUMMARY .................................................................................................................... 12

ARGUMENT .................................................................................................................. 13

    I.    **THE REQUIREMENTS OF RULE 23(a) ARE SATISFIED.** ....................... 16

        a.    **The Class Satisfies the "Numerosity" Requirement of Rule 23(a)(1).** ............ 16

        b.    **Common Questions of Law and Fact** ......................................................... 18

        c.    **Typicality is satisfied because Plaintiff and the Class members' calls were recorded by Defendants in an illegal and improper manner.** ............ 19

        d.    **Adequacy is satisfied because Plaintiff has common interests with the class and class counsel will protect the interests of the class.** ............ 20

    II.    **THE REQUIREMENTS OF RULE 23(B) ARE SATISFIED.** ......................... 21

        a.    **Predominance is satisfied because common questions of law or fact predominate over questions affecting only individual class members.** ............ 21

        b.    **Superiority is satisfied because a class-wide proceeding would be more efficient than proceeding on an individual basis.** ............ 23

A CLASS ACTION TRIAL WILL BE MANAGEABLE ............................................. 23

Case 4:16-cv-00947-SRB   Document 179   Filed 05/31/18   Page 3 of 30

# Table of Authorities

**Cases**

*Abarca v. Werner Enters.*, No. 8:14CV319, 2018 U.S. Dist. LEXIS 32852 (D. Neb. Feb. 28, 2018).................................................................................................................. 20, 22

*Agne v. Papa John's Int'l*, 286 F.R.D., 559 (W.D. Wash. 2012) ................................. 23

*Alpern v. UtiliCorp United, Inc.*, 84 F.3d 1525 (8th Cir. 1996) ................................. 20

*Amchem Prods., Inc., v. Windsor*, 117 S. Ct. 2231 (1997) .................................... 20, 23

*Amgen Inc. v. Conn. Ret. Plans and Trust Funds*, 133 S. Ct. 1184 (2013) ........... 14, 21

*Arkansas Educ. Ass'n v. Bd. of Educ.*, 446 F.2d 763 (8th Cir. 1971)........................... 16

*Avritt v. Reliastar Life Ins. Co.*, 615 F.3d 1023 (8th Cir. 2010) ................................. 22

*Blades v. Monsanto Co.*, 400 F.3d 562 (8th Cir. 2005) ........................................ 13, 22

*Bradford v. Agco Corp.*, 187 F.R.D. 600 (W.D. Mo. 1999)....................................... 16

*Casey v. Coventry HealthCare of Kansas, Inc.*, 2010 WL 3636140 (W.D. Mo. Sept. 10, 2010) 14

*Gen. Tel. Co. of Southwest v. Falcon*, 457 U.S. 147 (1982) ...................................... 18

*Cox v. Zurn Pex, Inc.* (*In re Zurn Pex Plumbing Prods. Liab. Litig.*), 644 F.3d 604 (8th Cir. 2011).................................................................................................................. 22

*Crown, Cork & Seal Co. v. Parker*, 462 U.S. 345 (1983) .......................................... 13

*DeBoer v. Mellon Mortgage Co.,* 64 F.3d 1171 (8th Cir.1995) ................................. 19

*Eisen v. Carlisle & Jacquelin*, 417 U.S. 156 (1974)............................................. 13, 14

*Fielder v. Credit Acceptance Corp.*, 175 F.R.D. 313 (W.D. Mo. 1997) ..................... 16

*Gen. Tel. Co. of Sw. v. Falcon*,  102 S. Ct. 2364 (1982)............................................ 20

*Gene and Gene LLC v. BioPay LLC*, 541 F.3d 318 (5th Cir. 2008)............................ 18

*Hammer v. JP's Sw. Foods, L.L.C.*, 267 F.R.D. 284 (W.D. Mo. 2010)....................... 14

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 2000) ............................. 15, 18, 19

*Hanon v. Dataproducts Corp.*, 976 F.2d 497 (9th Cir. 1992)...................................... 19

*In re Aquila ERISA Litig.*, 237 F.R.D. 202 (W.D. Mo. 2006) ................................... 15

*In re St. Jude Med. Inc.*, 425 F.3d 1116 (8th Cir. 2005)....................................... 15, 16

*In re Zurn Pex Plumbing Prods. Liab. Litig.*, 644 F.3d 604 (8th Cir. 2011) .............. 22

*Kristensen v. Credit Payment Servs.*, 2014 U.S. Dist. LEXIS 41696 (D. Nev. Mar. 26, 2014).. 15, 18, 19, 23

*Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802 (7th Cir. 2012) ............... 15

*Meyer v. Portfolio Recovery Assocs.*, LLC, 707 F.3d 1036 (9th Cir. 2009)......... 19, 22

*Morgan v. United Parcel Serv. of Am., Inc.*, 169 F.R.D. 349 (E.D. Mo. 1996) .......... 17

*Paxton v. Union Nat'l Bank*, 688 F.2d 552 (8th Cir. 1982).......................................... 16

*Savanna Group, Inc. v. Trynex, Inc.*, No. 10-cv-7995, 2013 U.S. Dist. LEXIS 1277 (N.D. Ill. Jan. 4, 2013).................................................................................................................. 23

*Silbaugh v. Viking Magazine Servs.*, 278 F.R.D. 389 (N.D. Ohio 2012) ................... 23

*Stern v. AT&T Mobility Corp.*, 2008 U.S. Dist. LEXIS 110305 (C.D. Cal. Aug. 22, 2008).. 13, 23

Case 4:16-cv-00947-SRB   Document 179   Filed 05/31/18   Page 4 of 30

*Tyson Foods, Inc. v. Bouaphakeo*, 136 S.Ct. 1036 (2016) ........................................................ 22
*United Steel v. ConocoPhillips Co.*, 593 F.3d 802 (9th Cir. 2010) ............................................. 14
*Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541 (2011) ............................................. 14, 18, 20
*Walters v. Reno*, 145 F.3d 1032 (9th Cir. 1998) ........................................................................ 18

**Statutes**

18 U.S.C. § 2511(1) ........................................................................................................................ 1
K.S.A. § 22-2514-18 ...................................................................................................................... 1
RSMo. § 542.042.1 ........................................................................................................................ 1

**Rules**

Fed. R. Civ. P. 23 ................................................................................................................. passim

**Treatises**

7A Wright & Miller, *Federal Practice & Procedure* § 1777 (2d ed. 1986)................................. 15
Herbert B. Newberg & Alba Conte, *Newberg on Class Actions*, § 3.05 (4th ed 2002)............... 17

v

# INTRODUCTION

18 U.S.C. § 2511(1) makes it unlawful, for "any person" to "intentionally intercept[t], endeavo[r] to intercept, or procur[e] any other person to intercept, any wire … communication" – and does the same for "intentionally disclosing or endeavoring to disclose" and "intentionally using or endeavoring to use" any unlawfully-obtained wire communication. Likewise, both Kansas and Missouri have adopted laws that prohibit the interception and/or disclosure of wire communications. K.S.A. § 22-2514-18; RSMo. § 542.042.1. Both laws make it illegal to intercept, disclose … communications.

Plaintiffs comprise a putative class of attorneys whose conversations were recorded (audio for calls, video for meetings in attorney meeting rooms) while speaking with detainees at the private prison in Leavenworth Kansas (CCA-Leavenworth) operated by Corecivic, formerly known as Corrections Corporation of America. Plaintiffs have brought the lawsuit against both Corecivic and Securus, the call provider at CCA-Leavenworth.

By this motion, Plaintiffs seek class certification of the following classes:

All attorneys who were, are, or will represent clients/detainees who are detained at CCA-Leavenworth, from August 31, 2013 to the present, plus periods of tolling, who communicated with clients, and whose communications have been intercepted, disclosed or used by Defendant and/or its affiliates.

This case is very well suited for class treatment. All three civil wiretap statutes at issue prohibit the interception of wire, electronic or oral communications. The underlying nature of the claims is that Defendants systematically recorded conversations between attorneys and detainees at CCA-Leavenworth (CCA-L). In support of this Motion, Plaintiffs submit substantial evidence demonstrating that the factual issues underlying Plaintiffs' claims are common to all putative Class Members.

1

Defendants uniformly assert that the recording of attorney/client phone calls was lawful because the detainee and/or his or her attorney impliedly consented to the recording. Defendants claim that Plaintiffs have impliedly consented to the recording of their phone calls; "based on the fact(s) that Plaintiffs elected to communicate via telephone with detainees at CCA-L and that Plaintiffs elected to proceed with such telephonic communication even after being admonished that the call was subject to 'recording and monitoring.'" *Securus Amended Answer to Third Amended Complaint,* ECF Doc. No. 56 at *14, and "plaintiffs and/or each inmate/detainee who called plaintiffs consented to the monitoring and/or recording of each such telephone call by making, accepting and/or participating in such telephone calls after being informed either orally or in writing, or both, that such telephone calls were subject to being monitored and/or recorded and, furthermore, by continuing to accept and/or participate in such telephone calls received from inmates and/or detainees." *Corecivic Amended Answer to Third Amended Complaint*, ECF Doc. No. 67 at *8.

This question alone – whether Plaintiffs or Detainees have impliedly consented to the recording of conversations - is sufficient to establish the commonality and typicality requirements of class certification under Fed. R. Civ. P. 23. Discovery to date has demonstrated that under no circumstances is there a situation where an Attorney or Detainee is unequivocally told that their call will be recorded, nor is there a situation where the parties are guaranteed to have an unrecorded conversation. Thus, consent is as illusory as it is impossible.

2

## FACTS IN SUPPORT OF PLAINTIFFS' MOTION

### *Calls to Attorneys appearing on the Special Master List*

Based on Securus Data, 18,759 calls were recorded from calls placed to 567 known attorneys appearing on the Special Master List. ***SOF 70.*** Based on Corecivic's data through June of 2017, 197,757 calls were placed to 913 known attorneys from the Special Master List. ***SOF 71.*** There are 398 numbers from the Special Master List that appear in the Corecivic data but not the Securus Data. ***SOF 72.*** There are 52 additional numbers from the Special Master list that appear on Securus data, but not Corecivic call records. ***SOF 73.***

### *Securus and Corecivic Call Logs Generally*

Both Defendants produced reports called "Call Detail Report" (CDR). CDR is a report generated through the Securus telephone monitoring platform that is used by Corecivic for Detainees to make calls. Securus produced a "Call Detail Report" that provided information regarding Detainee calls that included, among other things; the date, time, number called, and whether the call was recorded. Securus' CDR was run only as to the Special Master List. ***SOF 40.*** Corecivic also produced CDRs, but those records do not reflect whether a call was recorded. ***SOF 77.*** This means some information is available as to recorded calls but it is incomplete at this stage of the litigation.

### *Call Records to Numbers from Bar Directories Not Appearing on Special Master List*

38,243 additional attorney phone numbers that do not appear on Special Master Cohen's List have been identified through the subpoena of attorney bar records from Kansas, Nebraska, Iowa, Missouri and the Kansas City Metropolitan Bar Association. ***SOF 75.*** From the 38,243 additional phone numbers, 13,315 additional phone calls were made to numbers that did not appear

on the Special Master List to 580 attorney phone numbers. *SOF 76.* Corecivic's records do not indicate whether a call was recorded, so it is unknown whether these calls were recorded. *SOF 77.*

### Call Records related to Detainee and Attorney Requests for Privatization

Defendants use the term privatization to identify a practice by which Detainees and/or Attorneys may request that Defendants not record calls to an attorney number. Corecivic has provided copies of requests for privatization from Attorneys, Detainees (beginning in October 2016), and one-time attorney requests for attorney/client phone calls. *SOF 78.* 215 of these phone numbers appear on the Special Master List. *SOF 79*. 24 of these phone numbers do not appear on the Special Master List. *SOF 80.*

Based on Corecivic's records, 362 separate phone calls were placed to phone numbers identified through privatization requests, but do not appear on the Special Master List, and accordingly, it is unknown whether these calls were recorded. *SOF 81.* Based on Securus' call records, 7,914 calls to numbers that were identified through Detainee and Attorney Requests for privatization (that also appear on the Special Master List, and were therefore produced by Securus in their CDRs) were recorded. *SOF 82.*

Analyzing Corecivic's production of privatizations requests against Securus' CDRs, 203 separate phone calls to a number appearing on the Special Master List were recorded after either a Detainee or Attorney had requested privatization or identified themselves as an attorney. *SOF 83.*

### Call Records from Corecivic Privatization Reports

Corecivic, to date, has produced 9 separate lists of attorney numbers it claims were privatized, as well as dates on which privatization occurred. From those lists, 546 unique numbers appear on the Corecivic privatization reports. *SOF 85.* 356 unique numbers from the Corecivic

4

privatization lists appear on the Special Master Report. *SOF 86.* 190 unique numbers from the Corecivic privatization lists do not appear on the Special Master Report. *SOF 87.* From the numbers that appear on Corecivic's privatization lists, Securus' CDRs reflect 9,438 recorded calls to those 356 numbers. *SOF 88.* Of the 9,438 calls, 2,413 calls were recorded after the earliest date of privatization appearing in the Corecivic's privatization lists. *SOF 89.* From the numbers on the Corecivic's privatization lists that do not appear on the Special Master Report, Corecivic's records indicate 5,817 phone calls placed to those numbers. *SOF 90.*

From the Corecivic privatization reports, 133 separate Federal Public Defender numbers from across the nation were not privatized until 2013 or later, despite the 2009 and 2011 contract amendments requiring FPD numbers to be free and private. *SOF 91.* From that group of numbers, at least 2,134 phone calls were recorded from calls placed to Federal Public Defenders. *SOF 92*. It is unknown whether more calls were recorded, because not all FPD numbers appear on the Special Master List.

*Securus Privatization Reports*

Securus' privatization records contain 161 unique records of attorney phone numbers appearing on the Special Master Report. *SOF 93.* Securus did not run privatization reports for numbers not appearing on the Special Master Report. *SOF 12.* ████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
██████████████████████████████████████████████████ *SOF 5-8, 54.* ██████████████████████████████████████████
████████████████████ . *Id.* ████████████████████████████

████████████████████████████████████████ *Id.* From the Securus privatization reports, 1,627 phone calls were recorded after the first privatization event. ***SOF 13.***

***Discovery Regarding Defendants' Practices and Policies Demonstrates that Attorney/Client Calls are Routinely, Systematically Recorded, without Adequately Informing Parties, and in Many Cases, Recording Long After Calls Should Not Have been Recorded.***

Upon incarceration at the CCA-L, Detainees are supposed to be given various documents, including the "inmate handbook" and "acknowledgment of phone policy". ***SOF 14.*** In 2011-12, the inmate handbooks explicitly stated that "all calls may be monitored, and are recorded." ***SOF 16.*** In recent versions, the inmate handbook only states that "dayroom telephones are subject to monitoring." ***SOF 17.*** The inmate handbook makes it the Detainee's responsibility to inform their attorney about Corecivic's policies. ***SOF 18-19.*** However, in reality, there is no guarantee that a detainee received a handbook. In fact, it is more likely than not that a detainee never received a handbook. ***SOF 15.***

Attorneys representing Detainees are not informed by Defendants of their policies regarding recording of phone calls and/or the process for privatization. ***SOF 20-21.*** Attorneys may hear during a call from the Detainee that a call is "subject to monitoring and recording." ***SOF 61.*** Another way for a Detainee to have an unrecorded phone call with an attorney is to place the call from a facility employee's office. Employee offices phones are not part of the Securus platform and are therefore not recorded. ***SOF 22.*** Detainees are informed of this process through the "monitoring of Inmate/Detainee Telephone Calls" notice which states, in pertinent part, "A properly placed phone call to an attorney is not monitored. You must contact your unit team to request an unmonitored attorney call." ***SOF 23.*** However, in reality, Detainees are not allowed to request a private call of this nature unless it is a "special circumstance. But generally it is not done." ***SOF 24.***

On rare occasions, attorneys have requested a private call between a Detainee and the Attorney to be held using a phone of a facility employee. *SOF 25.* Even in those cases, if not all circumstances, unless there is a window to the hallway allowing the Detainee to be observed from outside the office, the facility staff must be present in the room for the phone call. *SOF 26.* Although Corecivic is now aware of the attorney-client relationship and the attorney's phone number, Corecivic takes no steps to privatize the attorney number to ensure that future calls between Detainees and Attorneys will not be recorded. *SOF 27.*

Up and until October, 2016, a Detainee had no way to directly request of Defendants that calls made to their attorney using the Securus platform not be recorded. *SOF 28.* Instead, Detainees were required to instruct their attorneys to request privatization. *SOF 19.* Beginning in October, 2016, Corecivic changed its policies to allow Detainees to request that their attorney's phone numbers be privatized. *SOF 29.* A Detainee can now complete the form attached as Exhibit 13. *SOF 30.* This form is not provided to Detainees at intake but rather generally made available. *SOF 31*. Once a Detainee fills out Exhibit 13, and the number has been verified by Defendants, that attorney number should be set to private on at least a facility level. *SOF 32.* Detainees will then receive a confirmation that the number has been privatized. *SOF 33.* Once a number has been set to private, it is supposed to be private for all Detainees calling that attorney number. *SOF 34.*

However, not all numbers that have been verified as attorney numbers are privatized despite Detainee receiving a confirmation that the number has been set to private and calls will not be recorded. *SOF 35.* Beginning in August 2016, Defendants received a large number of attorney requests for privatization as a result of the investigation being conducted by Judge Robinson in USA v. Black, Case No. 16-CR-20032 related to the recording of attorney/client calls and visits and whether those recordings were disseminated to the government. *SOF 36.* Included in those

7

requests was a request from David Johnson that his number be set to private and not be recorded. *SOF 37.*

Despite Johnson's request in August, 2016, his phone numbers were not privatized until March 27, 2017. *SOF 38.* Between Plaintiff Johnson's request for privatization and the number being privatized, Plaintiff Johnson received several phone calls from clients that were recorded. *SOF 39.*

It is unknown how many additional requests went unanswered since Securus possesses all the recorded call data and, during this phase, it has only produced data related to the Special Master list. In other words, other phone numbers appearing in attorney bar records may also demonstrate additional failures by Defendants to not record attorney/client calls. *SOF 40.*

### Internal Review of Recorded Phone Calls and Video

Corecivic routinely reviews and listens to phone calls for internal security purposes. *SOF 41.* In so doing, Corecivic instructs its investigators that in the event they come across an attorney/client phone call, they are to stop listening. *SOF 42-43.* ███████████████ ████████████████████████████████████████████████████████. *SOF 44.* Even more troubling, Corecivic does not privatize the attorney phone number on that recording to ensure that future calls to that attorney will not be recorded. *SOF 45.* Corecivic also reviews its recorded video.

### Administrative Subpoenas and Informal Requests from Law Enforcement

Corecivic routinely receives requests from law enforcement for phone call recordings in conjunction with criminal investigations. *SOF 47.* Requests for phone call and video recordings come in various forms including grand jury subpoenas, trial subpoenas, administrative subpoenas, written requests from law enforcement, written requests from the United States Attorney's Office,

8

email requests from law enforcement and in some cases, a simple phone call from law enforcement. *SOF 48.* Only a grand jury subpoena and trial subpoena have judicial oversight. *SOF 49.* Administrative subpoenas, email and phone requests are honored as well yet are not subject to judicial oversight. *SOF 49.* In some cases, such as a request from United States Marshal Service (USMS), the request explicitly informs Defendants that attorney/client phone calls are not subject to the request. *SOF 51.* Despite the explicit notice that attorney/client calls should not be included in the calls handed over to the government, Corecivic does nothing to ensure that the fulfilled request does not include attorney/client recorded calls and video. *SOF 52.* In the case of recorded calls, Defendants rely on the inadequate safeguard of privatization to comply with law enforcement requests that exclude attorney/client recorded calls.

### *The Federal Public Defender and the 2011 Amendments to the Corecivic Contract with BOPT/USMS*

As early as 2011, possibly 2009, the USMS contract with Corecivic mandated that calls to Federal Public Defender Offices be free and private. *SOF 53.* ████████████████
████████████████████████████████████████████. *SOF 54.* Due to the needs of the facility, Detainees are regularly transferred to other site levels, including areas of CCA-L that do not generally house federal detainees. *SOF 55.* ██████████
████████████████████████████████████████
████████████████████████████████████████
████████████ *SOF 56.*
        ██████████████████████████████
████████████████████████████. *SOF 57.* ██████████
████████████████████████████████████████
████████████████████████████████████. *SOF 58.*

During the 2011 to 2013 time period, 1338 calls placed by detainees to the Kansas Federal Public Defender were recorded. *SOF 59.*

### *Audio Admonitions of Recording of Phone Calls*

Callers using the Securus platform might hear various prompts at the outset of a call. *SOF 60.* If a number is not privatized both the calling party and the receiving party will hear "This call is subject to monitoring and recording." *SOF 61.* If a number is privatized, neither the calling party, nor the receiving party will hear the foregoing admonition. *SOF 62.* However, Detainees and Attorneys are not informed in any way by Defendants about the distinction between hearing nothing (meaning no recording) and hearing the admonition (being recorded). *SOF 63-64.*

Securus' corporate representative testified that the reason the language says "subject to" is because not all calls are monitored, and thus only the possibility exists. "That is why it says subject to." *SOF 65.* Corecivic's corporate representative testified the reason for the language had to do with its contractual obligations with the BOPT/USMS to notify the caller of the potential for monitoring. *SOF 66.* At no point did this admonition contain language similar to the 2011/12 inmate handbooks that states "all calls are subject to monitoring, and will be recorded." *SOF 67.*

### *Court Orders re Non Recording of Phone Numbers*

On August 10, 2016, in conjunction with a criminal investigation in USA v. Black, Case No. 16-CR-20032, Judge Robinson issued an Order, requiring "that all detention facilities in Kansas and Missouri, as well as CCA, that house detainees charged in the United States District Court for the District of Kansas immediately **CEASE AND DESIST:** (1) audio-visual recording of attorney-client communications in the detention facility; (2) audio recording of attorney-client phone calls; and (3) audio-visual recording of attorney-client videoconference calls;" and "that CCA, and the detention facilities in Kansas or Missouri that house detainees charged in the United

10

States District Court for the District of Kansas shall FORTHWITH submit written confirmation to the United States Marshal for the District of Kansas that the facilities are not audio or video recording any type of attorney-client communications." ***SOF 68.***

On August 19, 2016, in conjunction with USA v. Ronald Bell, Case No. 16-00003-01-CR-W-SRB, this Court ordered that "unless it has been specifically and explicitly authorized, in advance, by a federal judicial officer in the Western District of Missouri, no detention facility used by the USMS to house federal inmates charged in the Western District of Missouri should record: (1) face-to-face meetings held in said detention facilities between detainees and defense counsel; (2) telephone calls between detainees in said detention facilities and the attorney representing the detainee; and (3) videoconference calls between detainees in said detention facilities and defense counsel;" and "unless it has been specifically and explicitly authorized, in advance, by a federal judicial officer in the Western District of Missouri, all facilities used by the USMS to house detainees charged in the Western District of Missouri shall immediately **CEASE AND DESIST** recording: (1) face-to-face meetings held in said detention facilities between detainees and counsel representing the detainee; (2) telephone calls between a detainee in said detention facilities and counsel representing the detainee; and (3) videoconference calls between a detainee in said detention facilities and counsel representing the detainee;" and "all facilities used by the USMS to house detainees charged in the Western District of Missouri shall **FORTHWITH** submit written confirmation to the USMS that their facility is in compliance with the requirements of this order prohibiting the recording of activity between a detainee and counsel representing the detainee, unless said recording has been specifically and explicitly authorized, in advance, by a judicial officer in the Western District of Missouri." ***SOF 69.***

## SUMMARY

The following inescapable conclusion is true: Attorney/Client calls were recorded by Defendants with Defendants' knowledge. At issue is the scope of the class. Given the current posture of the case, Plaintiffs' class definition is most appropriate.

Defendants' primary arguments are that attorneys and their clients somehow consented to the recording of their phone calls, and thus Plaintiffs cannot prevail as a matter of law. While this common issue of fact and law supports class certification (all that is required at this stage of the proceedings), the argument is equally fallacious, because (1) Detainees do not have an adequate means of private consult with their counsel while incarcerated at CCA-L; (2) prior to October 2016, Detainees were not allowed to request that their attorneys' phone numbers be privatized; (3) Attorneys were never told they could request their numbers be privatized; (4) even after Attorneys and/or Detainees requested privatization, phone calls continued to be recorded (for as much as 6 months for the named plaintiff – and well after this lawsuit was filed); (5) thousands of calls to Federal Public Defender numbers – numbers that were required to be privatized – continue(d) to be recorded.

The Court should grant class certification because significant questions in this case are common to the entire class and predominate over any individual issues. Those questions are:

- whether Defendants could lawfully record conversations between attorneys and their clients;

- whether Defendants failed to take proper steps to ensure that attorney-client communications were not being recorded;

- whether Defendants violated state and federal wiretap laws by recording conversations that they could not legally record, concealing the nature of

12

the recording and providing the recording to third parties without disclosing
that the recording could be provided to a third party;

These questions are common to all class members and will be the predominate focus of the litigation, because all class members were uniformly:

- recorded during telephonic conversations between themselves and their clients;

- video-recorded during in-person meetings;

Under these circumstances, Courts routinely certify class actions under Fed. R. Civ. P. 23 This Court should follow the well-established case law and certify this case as a class action pursuant to Fed. R. Civ. P. 23.

## <u>ARGUMENT</u>

The limited nature of this Motion circumscribes the scope of the Court's present inquiry. *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 177-78 (1974). "In determining the propriety of a class action, the question is not whether the plaintiff or plaintiffs have stated a cause of action or will prevail on the merits, but rather whether the requirements of Rule 23 are met." *Id.* Although a court may look behind the pleadings to decide a motion for class certification, "the court must look only so far as to determine whether, given the factual setting of the case, if the plaintiff's general allegations are true, common evidence could suffice to make out a prima facie case for the class." *Blades v. Monsanto Co.*, 400 F.3d 562, 566 (8th Cir. 2005).

Class actions have two primary purposes: (1) to promote judicial economy by avoiding multiple suits; and (2) to protect the rights of persons who might not be able to present claims on an individual basis." *Stern v. AT&T Mobility Corp.*, 2008 U.S. Dist. LEXIS 110305, at *6 (C.D. Cal. Aug. 22, 2008); *Crown, Cork & Seal Co. v. Parker*, 462 U.S. 345 (1983)). In ruling on a

motion for class certification, the Court must determine, without pre-judging the merits of the claims or defenses, whether plaintiff's theory of recovery is amenable to class treatment. *United Steel v. ConocoPhillips Co.*, 593 F.3d 802, 808-09 (9th Cir. 2010). "Merits questions may be considered to the extent—but only to the extent—that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied." *Amgen Inc. v. Conn. Ret. Plans and Trust Funds*, 133 S. Ct. 1184, 1194 (2013) (quoting *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011)).

"To be certified as a class, plaintiffs must meet all of the requirements of Rule 23(a) and must satisfy one of the three subsections of Rule 23(b)." *Hammer v. JP's Sw. Foods, L.L.C.*, 267 F.R.D. 284, 287 (W.D. Mo. 2010).

Under Federal Rule of Civil Procedure 23(a):

One or more members of a class may sue or be sued as representative parties on behalf of all members only if: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

In determining whether to certify a class, the Court does not inquire into the merits of plaintiff's claims unless and "only to the extent … that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied." *Amgen,* 133 S. Ct. at 1194-95 ("Rule 23 grants courts no license to engage in free-ranging merits inquiries at the certification stage.") (citing *Dukes*, 131 S.Ct. at 2552 n.6 (2011); and *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 177 (1994)). *Casey v. Coventry HealthCare of Kansas, Inc.*, 2010 WL 3636140, at *2 (W.D. Mo. Sept. 10, 2010) (Kays, J.) ("[T]he decision whether or not to certify a class is not a reflection of the merits of the case"). The Court conducts only a preliminary inquiry beyond the pleadings to ascertain if "common evidence could suffice to make out a prima facie case for the

class." *Id.* "[T]he court should not turn the class certification proceedings into a dress rehearsal for a trial on the merits." *Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 811 (7th Cir. 2012).

In addition to the requirements set forth in Rule 23(a), a proposed class must satisfy one of the three alternative requirements of Rule 23(b). Fed. R. Civ. P. 23(b). Plaintiffs seek certification pursuant to Rule 23(b)(1)(3), which authorizes certification when:

> the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole.

Fed. R. Civ. P. 23(b)(2); or

> the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

Fed. R. Civ. P. 23(b)(3).

Rule 23(b)(3) certification is appropriate "whenever the actual interests of the parties can be served best by settling their differences in a single action." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1022 (9th Cir. 2000) (citing 7A Wright & Miller, *Federal Practice & Procedure* § 1777 (2d ed. 1986)). Certification is appropriate if the Rule 23 prerequisites are established by a preponderance of the evidence.

*Kristensen v. Credit Payment Servs.*, 2014 U.S. Dist. LEXIS 41696, at *18 (D. Nev. Mar. 26, 2014). The district court retains discretion to determine whether class certification is proper. *In re St. Jude Med. Inc.*, 425 F.3d 1116, 1119 (8th Cir. 2005). However, the "interests of justice require that when in doubt, any error, if there is to be one, should be committed in favor of allowing the class action." *In re Aquila ERISA Litig.*, 237 F.R.D. 202, 207 (W.D. Mo. 2006).

15

# I.    THE REQUIREMENTS OF RULE 23(a) ARE SATISFIED.

"To be certified as a class, plaintiffs must meet all of the requirements of Rule 23(a) and must satisfy one of the three subsections of Rule 23(b)."  *In re St. Jude Med.*, 425 F.3d at 1119. Under Rule 23(a):

> One or more members of a class may sue or be sued as representative parties on behalf of all only if: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interest of the class.

Fed. R. Civ. P. 23(a).  As more fully set forth below, this case satisfies each requirement.

## a.    The Class Satisfies the "Numerosity" Requirement of Rule 23(a)(1).

First, the Court must determine that the proposed class is so numerous that "joinder of all members is impracticable."  Fed. R. Civ. P. 23(a)(1); *Paxton v. Union Nat'l Bank*, 688 F.2d 552, 559 (8th Cir. 1982).  There are no "arbitrary rules" dictating the number of class members necessary to satisfy numerosity.  *Id*.  (citations omitted).  The numerosity requirement rule does not contain any explicit numerical limitations and it is permissible to estimate class size.  *Bradford v. Agco Corp.*, 187 F.R.D. 600, 604 (W.D. Mo. 1999) ("This Court finds that a class of twenty to sixty-five members is sufficiently numerous under Rule 23.") The Eighth Circuit has found as few as twenty (20) plaintiffs sufficient to certify a class.  *See Arkansas Educ. Ass'n v. Bd. of Educ.*, 446 F.2d 763, 765 (8th Cir. 1971); *Tinsley v. Covenant Care Servs., LLC*, 2016 U.S. Dist. LEXIS 11988, *18, 2016 WL 393577 (E.D. Mo. Feb. 2, 2016) (certifying a class between 35 and 101 class members); *Fielder v. Credit Acceptance Corp.*, 175 F.R.D. 313 (W.D. Mo. 1997) (certifying class consisting of 120 to 160 members).  The term "impracticable" does not mean that joinder

must be impossible, but it does require a showing that it "would be extremely difficult or inconvenient to join all members of the class." *Morgan v. United Parcel Serv. of Am., Inc.*, 169 F.R.D. 349, 355 (E.D. Mo. 1996). Further, it has consistently been held that joinder is impracticable where the class is composed of more than 40 persons. Herbert B. Newberg & Alba Conte, *Newberg on Class Actions*, § 3.05 (4th ed. 2002).

Here, analysis of the data produced to date unequivocally demonstrates that the class is so numerous that joinder is impractical, *to wit*:

- 18,759 calls were recorded from calls placed to 567 known attorneys appearing on the list provided by Special Master Cohen in the Black litigation, Case No. 16-CR-20032 ("The Special Master List"), and provided to the Parties by the Court.

- 38,243 additional attorney phone numbers that do not appear on Special Master Cohen's list have been identified through the subpoena of bar directories from Kansas, Nebraska, Iowa, Missouri and the Kansas City Metropolitan Bar Association.

- From that list of 38,243 additional phone numbers, 13,315 additional phone calls were made to numbers that did not appear on the Special Master List to 580 distinct phone numbers.

- From Corecivic's nine separate privatization reports produced to date:

  o 546 unique numbers appear on the Corecivic privatization reports.
  o 356 unique numbers from the Corecivic privatization lists appear on the Special Master Report.
  o 190 unique numbers from the Corecivic privatization lists do not appear on the Special Master Report.
  o From the numbers that appear on Corecivic privatization lists, Securus Call Detail Reports reflect 9,438 recorded calls to those 356 numbers.
  o Of the 9,438 calls, 2,413 calls were recorded after the earliest date of privatization appearing in the Corecivic Privatization lists.
  o From the numbers from the Corecivic privatization lists that do not appear on the Special Master Report, Corecivic records indicate 5,817 phone calls placed to those numbers.
  o From the Corecivic Privatization Reports, 133 separate Federal Public Defender numbers were not privatized until 2013 or later, despite the 2009 and 2011 Contract Amendments requiring FPD numbers to be free and private.

17

**b. Common Questions of Law and Fact**

The commonality requirement serves two purposes: (1) ensuring that absentee members are fairly and adequately represented and (2) ensuring practical and efficient case management. *Walters v. Reno*, 145 F.3d 1032, 1045 (9th Cir. 1998) (citing *Gen. Tel. Co. of Southwest v. Falcon*, 457 U.S. 147 (1982)). "An issue is common if (1) it is susceptible to generalized, class-wide proof; or (2) if the same evidence will suffice for each member to make a prima facie showing of that issue." *Kristensen v. Credit Payment Servs.*, 2014 U.S. Dist. LEXIS 41696, at *26). In contrast, "[a]n issue is individual if members of a proposed class will need to present evidence that varies from member to member." *Id*. "The existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class." *Hanlon*, 150 F.3d at 1019. A single common issue is sufficient. *Dukes*, 131 S. Ct. at 2556 (2011). The standard for showing commonality is "permissive." *Hanlon*, 150 F.3d at 1019.

While only one question of law or fact is required, here there are many issues common to the proposed class, including: (1) whether Defendants had a policy and practice of recording calls; (2) whether Defendant had a policy and practice of not advising parties to the calls that telephone calls <u>are in fact</u> recorded; (3) whether the Detainee or Attorney consented to the recording (impliedly or otherwise); and (4) the monetary and injunctive remedies to which class members are entitled. On all of those issues, plaintiffs can "advance a viable theory employing generalized proof to establish liability with respect to the class involved." *Kristensen*, 2014 U.S. Dist. LEXIS 41696, at *28 (citing *Gene and Gene LLC v. BioPay LLC*, 541 F.3d 318, 327 (5th Cir. 2008)). In similar circumstances, many courts have found that consent is a common issue that can be addressed with class-wide proof, regardless of whether at trial the consent issue will be an element

of the claim or an affirmative defense. *See, e.g., Meyer v. Portfolio Recovery Assocs.*, LLC, 707 F.3d 1036, 1042 (9th Cir. 2009) (where defendant did not show any instance of consent, it is a common issue with a common answer); *Kristensen*, 2014 U.S. Dist. LEXIS at *29-30 (in the absence of admissible evidence that consent was actually given, "courts should ignore a defendant's argument that proving consent necessitates individualized inquiries"); *Agne v. Papa John's Int'l*, 286 F.R.D. at 567-568 (bare assertion of individualized issues of consent, unsupported by concrete evidence, does not weigh against class certification).

These questions apply equally to all Class members and, therefore, the commonality element is satisfied.

**c. Typicality is satisfied because Plaintiff and the Class members' calls were recorded by Defendants in an illegal and improper manner.**

A class representative's claims are typical if they are "reasonably coextensive with those of absent class members; they need not be substantially identical." *Hanlon*, 150 F.3d at 1020. "The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992) (internal quotation and citation omitted). Here, the claims of Johnson are typical of the claims of other class members. Their claims, like the claims of all class members, derive from the fact that their phone calls and in-person meetings were recorded without consent.

The burden of demonstrating typicality is fairly easily met so long as other class members have claims similar to the named plaintiff. *DeBoer v. Mellon Mortgage Co.,* 64 F.3d 1171, 1174 (8th Cir.1995)). "Factual variations in the individual claims will not normally preclude class certification if the claim arises from the same event or course of conduct as the class claims, and

19

gives rise to the same legal or remedial theory." *Alpern v. UtiliCorp United, Inc.*, 84 F.3d 1525, 1540 (8th Cir. 1996). Typicality and commonality "tend to merge" because "[b]oth serve as guideposts for determining whether under the particular circumstances maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Abarca v. Werner Enters.*, No. 8:14CV319, 2018 U.S. Dist. LEXIS 32852, at *30 (D. Neb. Feb. 28, 2018) *quoting Dukes*, 564 U.S. at 349, n.5 (quoting *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 157-58, n.13, 102 S. Ct. 2364, 72 L. Ed. 2d 740 (1982)).

Plaintiff's claims are typical of the Class members in that his calls were recorded without his consent. Plaintiff seeks statutory penalties pursuant to state and federal law. All Class members stand to recover if Plaintiff's theories are proven. Thus, the typicality requirement is met.

### d. Adequacy is satisfied because Plaintiff has common interests with the class and class counsel will protect the interests of the class.

Fed. R. Civ. P. 23(a)(4) requires a movant to demonstrate that he or she will fairly and adequately protect the interests of the class. "This requirement focuses on whether '(1) the class representatives have common interests with the members of the class, and (2) whether the class representatives will vigorously prosecute the interests of the class through qualified counsel.'" *Abarca,* 2018 U.S. Dist. LEXIS 32852, at *31-32, quoting *Paxton,* 688 F.2d at 562-63. "This inquiry 'serves to uncover conflicts of interest between named parties and the class they seek to represent.'" *Id.,* quoting *Amchem Prods., Inc., v. Windsor*, 521 U.S. 591, 625, 117 S. Ct. 2231, 138 L. Ed. 2d 689 (1997).

Plaintiff has no interest that is antagonistic to, or conflicting with, the interests of the Class. To the contrary, Plaintiff's interests are coextensive to those of the proposed class members in establishing Defendant's liability and damages. Further, Plaintiff has retained qualified attorneys

20

who are experienced in class action litigation. Plaintiff's counsel has prosecuted numerous class action lawsuits in Missouri and nationwide on behalf of thousands of individuals and, as class counsel, will continue to vigorously prosecute this action on behalf of Plaintiff and the Class as a whole. Plaintiff, and class counsel, will adequately represent and protect the interests of the Class. Thus, the adequacy requirements are met.

## II.    THE REQUIREMENTS OF RULE 23(B) ARE SATISFIED.

Once the Rule 23(a) prerequisites are established, the plaintiffs must then establish that their class fits into one of the provisions of Rule 23(b) in order to be certified. See Fed. R. Civ. P. 23(b)(3). Plaintiffs seek a "hybrid" class certification pursuant to both Fed. R. Civ. P. 23(b)(2) and 23(b)(3).

Rule 23(b)(3) does not require plaintiffs seeking class certification to prove that each element of their claim is susceptible to classwide proof. See *Amgen,*, 133 S. Ct. at 1196. Rather, plaintiffs are required to show: (1) "questions of law or fact common to class members predominate over any questions affecting only individual members"; and (2) "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

Matters relevant to the Rule 23(b)(3) determination include: "(A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action." Fed. R. Civ. P. 23(b)(3).

### a.   Predominance is satisfied because common questions of law or fact predominate over questions affecting only individual class members.

When determining "whether common questions predominate, a court must conduct a limited preliminary inquiry, looking behind the pleadings," but that inquiry should be limited to determining whether, if the plaintiffs' "general allegations are true, common evidence could suffice to make out a prima facie case for the class." *Cox v. Zurn Pex, Inc.* (*In re Zurn Pex Plumbing*

*Prods. Liab. Litig.*), 644 F.3d 604, 618 (8th Cir. 2011), quoting *Avritt v. Reliastar Life Ins. Co.*, 615 F.3d 1023, 1034 (8th Cir. 2010) "In contrast to Rule 23(a)(2), the issue of predominance under Rule 23(b)(3) is qualitative rather than quantitative. "In contrast to Rule 23(a)(2), the issue of predominance under Rule 23(b)(3) is qualitativerather than quantitative. *Abarca*, 2018 U.S. Dist. LEXIS 32852, at *34-35.

"A common question is one where 'the same evidence will suffice for each member to make a prima facie showing [or] the issue is susceptible to generalized, class-wide proof.'" *Tyson Foods, Inc. v. Bouaphakeo*, 136 S.Ct. 1036, 1045, 194 L. Ed. 2d 124 (2016)). When reviewing for predominance, "'a court must conduct a limited preliminary inquiry, looking behind the pleadings,' but that inquiry should be limited to determining whether, if the plaintiffs' 'general allegations are true, common evidence could suffice to make out a prima facie case for the class.'" *In re Zurn Pex Plumbing Prods. Liab. Litig.*, 644 F.3d 604, 618 (8th Cir. 2011)(quoting *Blades,* 400 F.3d at 566.

Plaintiffs' claims focus predominantly on Defendants' conduct and the manner in which they recorded phone calls and meetings between attorneys and detainees. Based on the evidence discussed in Exhibit 1, the proposed class can establish a prima facie case, by a preponderance of the evidence, that the calls and meetings were recorded; that class members were not adequately, properly, or unequivocally warned that the calls and meetings would be recorded; that there are no adequate measures in place to assure that Attorneys and Detainees can have unrecorded communications; that even in the event that Government contracts mandated privatization, Detainees, Attorneys, or both requested privatization, Defendants did not comply with requirements of the privatization of attorneys' numbers. Therefore, Detainees and Attorneys did not, and could not be deemed to have provided either actual or implied valid consent to the recording. Defendants will, of course, have an opportunity to introduce whatever admissible evidence it might have to show that a particular call was not recorded, or that a particular caller gave consent. But at this point, more than a year and a half into the litigation, there is no such evidence. In analogous circumstances, courts have found that the consent issue is a common one that supports a finding of predominance. See, e.g., *Meyer*, 707 F.3d at 1042 (9th Cir. 2009);

22

*Kristensen*, 2014 U.S. Dist. LEXIS 41696, at \*29-30; *Agne v. Papa John's Int'l*, 286 F.R.D., 559, 567-568 (W.D. Wash. 2012); *G.M. Sign, Inc.*, 2009 U.S. Dist. LEXIS 73869, at \*6 (N.D. Ill. Aug. 20, 2009); *Silbaugh v. Viking Magazine Servs.*, 278 F.R.D. 389, 393 (N.D. Ohio 2012); *Savanna Group, Inc. v. Trynex, Inc.*, No. 10-cv-7995, 2013 U.S. Dist. LEXIS 1277, at \*31 (N.D. Ill. Jan. 4, 2013).

### b. Superiority is satisfied because a class-wide proceeding would be more efficient than proceeding on an individual basis.

The second prong of the Rule 23(b)(3) inquiry requires the class action to be "superior to other available methods for the fair and efficient adjudication of the controversy." See Fed. R. Civ. P. 23(b)(3). In evaluating superiority, a significant consideration is whether the claims are too small to be litigated individually. *Amchem Prods., Inc.*, 521 U.S. at 617.

Here, a class action is superior to the only other theoretical alternative— thousands of separate cases litigated from start to finish. Superiority is satisfied because the relatively small amount of money at stake for individual class members makes it unlikely that they have the financial incentive to litigate individually; there is no evidence of any other litigation involving the subject claims; there is no reason to believe that the Western District is an undesirable forum; and a class action will be manageable. *Stern v. AT&T Mobility Corp.*, No. CV 05-8842 CAS (CTx), 2008 U.S. Dist. LEXIS 110305, 37 (C.D. Cal. Aug. 22, 2008).

### A CLASS ACTION TRIAL WILL BE MANAGEABLE

Although there are thousands of calls and meetings at issue, a class trial should not present any unusual manageability issues. The key evidence in this case—on both liability and damages— can be presented through a relatively small number of witnesses, most of whom are identified by name in this motion, and most of whom would have to testify anyway even if the case involved a small number of calls by a few individual plaintiffs. Plaintiffs anticipate introducing testimony of several current and former personnel of Defendants, primarily concerning the policies and practices during the Class Period and Defendants' records concerning the calls at issue; a witness

who can testify about the number of qualifying calls made by class members; and the class representatives (and perhaps a small number of other class members if the Court believes it would be helpful). There are unlikely to be *any* liability issues that would require individualized evidence from class members, and in view of the fixed per call statutory damage amount, the damages calculation is straightforward. To the extent Defendants have admissible evidence concerning either a call that they contend were not recorded or a class member that Defendants contend were told about the recording and consented to it, Defendants would have an opportunity to present that evidence as part of their defense case. Given the evidence and testimony elicited to date, however, that prospect seems unlikely.

Respectfully Submitted,

**The Hodgson Law Firm, LLC**

By:  */s/ Michael Hodgson*
Michael Hodgson   MO Bar No. 63677

3699 SW Pryor Road
Lee's Summit, MO 64082
Tel: 816.600-0117
Fax: 816.600-0137
mike@thehodgsonlawfirm.com

*/s/ Lance Sandage*
Lance D. Sandage MO Bar No. 46022
Sandage Law LLC
1600 Genessee Street, Suite 314
Kansas City, MO 64102
Tel: 816.753.0800
Fax: 816.735.4602
lance@sandagelaw.com

*/s/ Joseph K. Eischens*
Joseph K. Eischens           MO #44706
Law Office of Joseph K. Eischens
1321 Burlington St., Suite 202
North Kansas City, Missouri 64116
(816) 945-6393 *telephone*
joe@jkemediation.com

ATTORNEYS FOR PLAINTIFFS

24

## CERTIFICATE OF SERVICE

I hereby certify that on May 31, 2018 a true and correct copy of the foregoing was filed electronically with the Court using the CM/ECF system, which will automatically send e-mail notification of such filing to the following attorney(s) of record:

**BAKER STERCHI COWDEN & RICE, L.L.C.**
Hal Meltzer
2400 Pershing Road, Suite 500
Kansas City, MO 64108
Telephone: (816) 471-2121
Facsimile: (816) 472-0288
Email: meltzer@bscr-law.com

**ATTORNEYS FOR DEFENDANT CORECIVIC**

and

**HUSCH BLACKWELL LLP**
LOWELL D. PEARSON
R. RYAN HARDING
235 East High Street, Suite 200
P.O. Box 1251
Jefferson City, MO 65102
Telephone: (573) 635-9118
Facsimile: (573) 634-7854
Email: lowell.pearson@huschblackwell.com
        ryan.harding@huschblackwell.com

TAYLOR B. CONCANNON
4801 Main Street, Suite 1000
Kansas City, MO 64112
Telephone: (816) 983-8000
Facsimile: (816) 983-8080
Email: taylor.concannon@huschblackwell.com

Joshua Martin
**Securus Technologies, Inc.**
4000 International Parkway
Carrollton, Texas 75007
tel: (972) 277-0335
joshuamartin@securustechnologies.com
**ATTORNEYS FOR DEFENDANT**
**SECURUS TECHNOLOGIES, INC.**                    By: **/s/ Michael Hodgson**
                                                  **ATTORNEY FOR PLAINTIFFS**

25