# IN THE UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF MISSOURI
### WESTERN DIVISION

DAVID JOHNSON on behalf of himself )
and all others similarly situated, )
                              )
            Plaintiffs, )
                              )
v.                                  )
                              )     Case No. 4:16-cv-00947-SRB
CORECIVIC et al.,                 )
                              )
            Defendants. )

## ORDER

Before the Court is Plaintiff David Johnson's Motion for Class Certification. (Doc. #179). For the reasons stated below, the motion is granted with a modified class definition.

## I.      Background

Plaintiff David Johnson ("Plaintiff") filed this action against Defendants CoreCivic and Securus Technologies, Inc. ("Securus"), alleging that Defendants violated the Federal Wiretap Act, Kansas Wiretap Act, and Missouri Wiretap Act ("the Wiretap Acts"), codified respectively at 18 U.S.C. § 2511(1); Kan. Stat. Ann. § 22-2514–18; Mo. Rev. Stat. § 542.402.1, by recording confidential phone calls and meetings between attorneys, including Plaintiff, and their clients at the Leavenworth Detention Center ("LDC"). (Doc. #32, p. 1). The Wiretap Acts generally make it unlawful to knowingly or intentionally intercept any wire, oral, or electronic communication, and to use or disclose such unlawfully obtained communications. *See* § 2511(1); § 22-2514–18; § 542.402.1.

CoreCivic is a private corrections management company that manages LDC. Securus provided telephone services and recording capabilities to CoreCivic at LDC. The telephone

platform allowed detainees[1] to place phone calls outside LDC and enabled CoreCivic to record and monitor such phone calls. (Doc. #199, p. 3). CoreCivic's default policy was to record detainee phone calls and in-person meetings, including those between attorneys and their detainee-clients. (Doc. #199, p. 3; Doc #201, p. 9). When a detainee placed a telephone call that was subject to recording and/or monitoring, a pre-recorded message would play for the detainee before the call connected, stating in relevant part: "This call is subject to recording and monitoring." (Doc. #199, p. 8). Likewise, the party on the receiving end of such a phone call would hear a pre-recorded message before the call connected containing the same warning: "This call is subject to recording and monitoring." (Doc. #199, p. 8). Defendants contend that the admonition heard by both parties to the telephone call constitutes consent to recording and monitoring, and for that reason, the recording and monitoring does not constitute a violation of The Wiretap Acts.[2] Defendants do not argue that parties to the in-person meetings that were recorded also received admonitions.

When a detainee placed a call to a privatized number,[3] the pre-recorded message heard by both parties to the call did not include the admonition warning that the call was subject to recording and monitoring. (Doc. #199, pp. 8–9). Plaintiff alleges and Defendants concede that some telephone calls placed to numbers that had been properly submitted for privatization were still recorded. (Doc. #199, p. 11). In regard to in-person meetings, CoreCivic's policy included silently recording video of certain meeting rooms at LDC. (Doc. #199, p. 9). Accordingly, conversations between attorneys and their detainee-clients that occurred in those rooms were

---

[1] The words "detainee(s)" and "inmate(s)" will be used interchangeably in this Order.
[2] Defendants assert attorneys and/or their detainee-clients also consented in additional ways to the recording and monitoring of their calls, which will be addressed *infra* in this Order.
[3] Privatized numbers are phone numbers designated as private on the telephone platform, such that calls placed to those numbers should not be monitored or recorded.

silently recorded. The recordings were overwritten on a thirty to sixty-day cycle. (Doc. #199, p. 9).

Before October 2016, CoreCivic's policy provided that detainees could place unrecorded and unmonitored phone calls to their attorneys by either 1) informing their attorneys that the attorneys could request their telephone numbers be placed on a do not record list or 2) placing a phone call from a staff member's office at LDC that was not subject to monitoring or recording. (Doc. #199, p. 6). CoreCivic did not notify attorneys with clients at LDC of the policy. (Doc. #179-4, p. 181). On August 19, 2016, deriving from *United States v. Bell*, Case No. 4:16-cr-00003-SRB-1, this Court issued a Cease and Desist Order, generally ordering detention facilities, including LDC, to stop recording conversations between attorneys and their detainee-clients "unless such recording has been specifically and explicitly authorized, in advance, by a judicial officer in the Western District of Missouri," and to submit written confirmation of their compliance with the order to the USMS.[4] Beginning in October 2016, CoreCivic began allowing detainees themselves to request privatization of their attorney's telephone numbers by submitting an Attorney Verification Form. (Doc. #199, p. 6). Despite this policy change, counsel for Defendants were unable to tell the Court at the Class Certification Hearing on August 30, 2018, if or how their clients complied with the Cease and Desist Order.

---

[4] This Cease and Desist Order followed a similar Cease and Desist Order issued on August 10, 2016, in the District of Kansas, which derived from *United States v. Black*, Case No. 16-20032-JAR, a case involving an LDC detainee whose telephone calls with his attorney were recorded. The discovery of recorded conversations came about based upon an allegation of LDC employees bringing illegal drugs into the facility. A special master was appointed by Chief Judge Robinson in that case, who investigated the recorded calls on the Securus platform to determine which recordings were associated with attorney telephone numbers. The special master compiled the attorney telephone numbers on a list designated the "Special Master List."

Case 4:16-cv-00947-SRB   Document 212   Filed 09/18/18   Page 3 of 25

Plaintiff argues that any recording or monitoring of a telephonic or in-person communication between attorneys and their detainee-clients at LDC that occurred during the relevant timeframe constitutes a violation of The Wiretap Acts, regardless of whether the attorney's number had been submitted for privatization. Accordingly, Plaintiff brings this motion to ask the Court for an order determining that his claims may be maintained as a class action, with the proposed Plaintiff class defined as follows:

> All attorneys who were, are, or will represent clients/detainees who are detained at CCA-Leavenworth, from August 31, 2013 to present, plus periods of tolling, who communicated with clients, and whose communications have been intercepted, disclosed or used by Defendant and/or its affiliates.

(Doc. #179, p. 1).

## II.    Legal Standard

### A.  Attorney-Client Privilege

"The attorney-client privilege is the oldest of the privileges for confidential communications known to the common law." *United States v. Yielding*, 657 F.3d 688, 706–07 (8th Cir. 2011) (quoting *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981)). Its purpose is "to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice." *Upjohn*, 449 U.S. at 389. The attorney-client privilege "is founded upon the necessity, in the interest and administration of justice, of the aid of persons having knowledge of the law and skilled in its practice, which assistance can only be safely and readily availed of when free from the consequences or the apprehension of disclosure." *Hunt v. Blackburn*, 128 U.S. 464, 470 (1888).

The Court acknowledges the importance of the attorney-client privilege and recognizes the sanctity of what is at stake in the present controversy—public trust in the legal system and

the administration of justice. Bearing in mind Plaintiff's allegations that thousands of attorney-client conversations have been uniformly intercepted by Defendants, the Court will lay out the standard for class certification and proceed with its analysis.

### B. Class Certification

Class certification is governed by Federal Rule of Civil Procedure 23. Rule 23 requires that an action satisfy all four prerequisites of Rule 23(a) and at least one of the provisions of Rule 23(b). *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013). Pursuant to Rule 23(a), the party seeking certification must demonstrate that the proposed class satisfies the requirements of numerosity, commonality, typicality, and adequate representation, to ensure that any class claims are limited "to those fairly encompassed by the named plaintiff's claims." *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 156 (1982) (internal quotations and citations omitted).

Plaintiff seeks certification under Rule 23(b)(2) and (b)(3). Rule 23(b)(2) authorizes certification when Defendants have acted in a way that applies to the class as a whole, so that injunctive or declaratory relief is appropriate for the whole class. Rule 23(b)(3) requires the Court to find that "questions of law or fact common to class members predominate over any questions affecting only individual members," and that a class action is the "superior" method of adjudicating the controversy.

Before analyzing whether the requirements set forth in Rule 23 have been met, the Court will address what have sometimes been referred to as the "implicit requirements" of the Rule 23 analysis: standing and ascertainability. With respect to the issue of standing as it applies to class actions, the Eighth Circuit has held that the "irreducible constitutional minimum of standing requires a showing of injury in fact to the plaintiff that is fairly traceable to the challenged action of the defendant, and likely to be redressed by a favorable decision." *Avritt v. Reliastar Life Ins.*

*Co.*, 615 F.3d 1023, 1034 (8th Cir. 2010). Regarding ascertainability, the Eighth Circuit has not "outlined a requirement of ascertainability," or treated it as a "separate, preliminary requirement." *Sandusky Wellness Ctr., LLC v. Medtox Sci., Inc*., 821 F.3d 992, 996 (8th Cir. 2016). Rather, in noting that "[m]ost of the other circuit courts of appeals have recognized that Rule 23 contains an implicit threshold requirement that the members of a proposed class be readily identifiable," the Eighth Circuit has determined that the certifying court must find the class sought to be represented is "adequately defined and clearly ascertainable" in connection with the court's Rule 23 analysis. *Id.* at 995 (internal quotations omitted) (collecting cases).

"Rule 23 does not set forth a mere pleading standard." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). Instead, a plaintiff "must affirmatively demonstrate his compliance with the Rule—that is, he must be prepared to prove that there are *in fact* sufficiently numerous parties, common questions of law or fact, etc." *Id.* (emphasis in original). The preponderance of the evidence standard applies to evidence proffered to establish the requirements of Rule 23. *Teamsters Local 445 Freight Div. Pension Fund v. Bombardier Inc*., 546 F.3d 196, 202 (2d Cir. 2008).

A district court "must undertake a 'rigorous analysis' to ensure that the requirements of Rule 23 are met." *Bennett v. Nucor Corp.*, 656 F.3d 802, 814 (8th Cir. 2011). It is inevitable that the court's analysis will frequently overlap to some extent with the merits of the underlying claims. *Wal-Mart*, 564 U.S. at 351. However, there are limits to a court's analysis of the merits of a matter at the class certification stage. "A court's inquiry on a motion for class certification is 'tentative,' 'preliminary,' and 'limited.'" *In re Zurn Pex Plumbing Prod. Liab. Litig.*, 644 F.3d 604, 613 (8th Cir. 2011). "Rule 23 grants courts no license to engage in free-ranging merits inquiries at the certification stage. Merits questions may be considered to the extent—but only to

6

the extent—that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied." *Amgen Inc. v. Connecticut Ret. Plans & Trust Funds*, 568 U.S. 455, 466 (2013). With these standards in mind, the Court will analyze the motion for class certification in accordance with the requirements of Rule 23.

## III. Discussion

### A. Requirements of Standing and Ascertainability Are Satisfied

#### 1. Standing

Plaintiff states the putative class members have standing to bring their claims under the Wiretap Acts because they have a substantial privacy interest in the recording of attorney-client communications. Defendant CoreCivic argues certification must fail because the majority of putative class members and/or their detainee-clients did not have a reasonable expectation of privacy in their communications, leaving them with no claim under the Wiretap Acts. CoreCivic argues the only attorneys with standing are those whose phone conversations were recorded post-privatization, effectively conceding that Plaintiff Johnson and some potential class members have standing. Presumably, CoreCivic draws a distinction between non-privatized and privatized communications because CoreCivic argues the parties consented to the recording of non-privatized communications. However, there is currently no binding Eighth Circuit authority to support this exact contention within the confines of a prison facility where attorney-client meetings are video recorded without notice and a cease and desist order that has not been complied with by the defendants. Securus did not argue standing is lacking. As a threshold matter, the Court finds Plaintiff and the members of the putative class have standing to bring their claims.

CoreCivic argues generally that "the recording of communications in a detention center, in the absence of a privatization request, 'traditionally has not provided the basis for a lawsuit in American courts.'" (Doc. #199, p. 21) (quoting *Braitberg v. Charter Communications, Inc.*, 836 F.3d 925, 930 (8th Cir. 2016)). This proposition is a mischaracterization of *Braitberg*. In fact, *Braitberg* involved consumer claims against a cable provider for unlawfully retaining personally identifiable information, and had nothing to do with the recording of attorney-client privileged conversations, privatization requests, or the detention center context. *Braitberg*, 836 F.3d at 925.

CoreCivic further contends that the monitoring and/or recording of an inmate's telephone call is not a violation of the Wiretap Acts where either the attorney or the inmate consented. (Doc. #199, p. 15). CoreCivic represents that federal courts have held consent existed under facts similar to those in the present case, including instances in which signs warning of potential recording and/or monitoring of phone calls were posted near the telephones used by inmates, inmates were verbally warned or warned through a written statement in a handbook, and/or attorneys and their inmate-clients were admonished with a pre-recorded message prior to a phone call.[5] CoreCivic supports its contentions by citing several cases that address consent when brought before the court on a dispositive motion, but none of which hold that a class is not certifiable due to consent under the Wiretap Acts. *See, e.g.*, *United States v. Van Poyck*, 77 F.3d 285, 290–91 (9th Cir. 1996) (concluding that detainee consented to the recording of his phone calls, none of which were placed to his attorney(s), and therefore, had no claim under the Fourth Amendment); *United States v. Faulkner*, 439 F.3d 1221, 1222–1225 (10th Cir. 2006) (affirming the district court's determination that detainees consented to the recording of their phone calls,

---

[5] Neither Defendant argues that any type of consent—implicit or explicit—was ever sought from the inmate or attorney during the recording of in-person meetings.

8

none of which were placed to their attorney(s), and therefore, such recordings were not excludible as evidence at criminal trial under the Wiretap Act).

The Eighth Circuit has not addressed the issue of class certification pertaining to the recording of attorney-client privileged conversations within a detention center, nor the consent defense that is raised herein. CoreCivic relies heavily on *United States v. Novak*, 531 F.3d 99 (1st Cir. 2008), and *Medina v. Cnty. of Riverside*, 308 Fed. Appx. 118 (9th Cir. 2009). Both of these cases address the issue of consent as it relates to the recording and monitoring of communications between attorneys and their detainee-clients, but neither addresses consent in relation to standing.

The court in *Novak*, which held that consent was adequate to support the monitoring of an inmate's calls to his attorney, limited its holding to issues of suppression under the Fourth Amendment. 531 F.3d at 101 ("The question that the parties present to us today is not whether we approve of the methods that law enforcement employed in this case, or whether prisons have authority under either state law or the Sixth Amendment of the United States Constitution to regularly monitor phone calls made between attorneys and their clients. While we recognize that the facts of this case may implicate these wider concerns, appellee Novak has limited his arguments in favor of suppression to a Fourth Amendment claim. Our holding is thus similarly circumscribed."). In *Medina*, inmates brought a claim under the Federal Wiretap Act after discovering that calls with their attorneys were being recorded. 308 Fed. Appx. at *120. In an abbreviated opinion, while the Ninth Circuit determined that the inmates consented to the recording of such telephone calls, that acknowledgement supported its affirmance of the district court's grant of summary judgment to the defendants based on the consent argument; it did not

go to the Ninth Circuit's reasoning for upholding the district court's denial of class certification. *Id.* at *119–20.

CoreCivic further argues that "inmate's [sic] conversations with their attorneys are not protected by the attorney-client privilege where the inmate is notified at the outset that the calls are subject to recording and/or monitoring . . . ." (Doc. #199, p. 16). To support this argument, CoreCivic relied primarily on *United States v. Eye*, 2008 WL 1701089 (W.D. Mo. April 9, 2008) in its briefing, and in addition, on *United States v. Hatcher*, 323 F.3d 666 (8th Cir. 2008) at the Class Certification Hearing. However, both *Eye* and *Hatcher* are distinguishable from this case, in that both dealt only with criminal convictions, not class certification; neither case involved claims under the Wiretap Acts; neither case involved video recording of in-person meetings; and neither case addressed the effect of a cease and desist order like this Court's Order of August 19, 2016 in this case. *Id.*

Further, unlike any of the cases cited by Defendants, this case involves the recording of in-person meetings between inmates and attorneys. Defendants do not allege consent was ever given for the recording of in-person meetings. Moreover, this case involves a Cease and Desist Order by this Court banning the recording of attorney-client phone calls. Neither Defendant supplied this Court with any evidence of compliance with this Court's Order of August 19, 2016, nor of the companion Order from the District of Kansas. Neither Defendant has briefed the Court on the the legal effect on Wiretap Act claims and/or consent in light of explicit Orders from the Western District of Missouri and the District of Kansas ordering all parties to cease recording attorney-client phone calls.

The Court finds Plaintiff Johnson and the putative class members have shown injury—specifically, the recording of attorney-client communications—under the Wiretap Acts. Such

10

injury is traceable to the actions of Defendants and a favorable decision would likely redress such injury. An analysis of the consent defense, which goes to the merits of the claim, is not relevant to determining whether the prerequisites for class certification are satisfied. "[C]lass certification is not the time to address the merits of the parties' claims and defenses . . . ." *Elizabeth M. v. Montenez*, 458 F.3d 779, 786 (8th Cir. 2006). Defendants have made clear they will file a motion for summary judgment, and the Court will entertain any timely filed motion. Accordingly, the Court finds Plaintiff and the putative class members have standing to bring their claims.

## 2. Ascertainability

Both Plaintiff and CoreCivic agree that a class is ascertainable if class members can be identified based on some objective criteria. (Doc. #208, p. 12) (Doc. #199, p. 17). Securus did not argue ascertainability is lacking. "A class may be ascertainable when its members may be identified by reference to objective criteria." *McKeage v. TMBC, LLC*, 847 F.3d 992, 998 (8th Cir. 2017). The Court also finds that Plaintiff has established that the members of the putative class are ascertainable.

Plaintiff contends that "the evidence and ESI produced to date conclusively establish that it is possible to identify which calls were recorded, facilitating the ascertainability of the class." (Doc. #208, p. 13). Plaintiff states that based on Securus data, 18,759 calls were recorded from calls placed to 567 known attorneys appearing on the Special Master List.[6] He further states that based on CoreCivic data, 197,757 calls were placed to 913 known attorneys from the Special

---

[6] As expounded upon in n.3 *supra*, a special master was appointed by Chief Judge Robinson in the District of Kansas in a related, underlying criminal case, *United States v. Black*, to investigate the recorded telephone calls on the Securus platform pertaining to LDC to determine which recordings were associated with attorney telephone numbers. The special master compiled the attorney telephone numbers on a list designated as the "Special Master List."

11

Master List.  Both Defendants produced a "Call Detail Report" ("CDR") generated through the Securus platform that provides information regarding detainee calls.  Securus's CDR provides the date and time a call was made, in addition to the number called and whether the call was recorded.  Corecivic's CDR does not reflect whether a call was recorded.  Plaintiff further contends 38,243 additional attorney phone numbers that do not appear on the Special Master List have been identified through the subpoena of attorney bar records, and from those numbers, 13,315 additional phone calls were made to 580 of those phone numbers.

Moreover, Plaintiff states that CoreCivic has provided copies of requests for privatization from attorneys and detainees, as well as one-time attorney requests for attorney-client phone calls.  Based on Securus's call records, 7,914 calls to numbers identified through the requests were recorded.  Based on CoreCivic's records, 362 phone calls were placed to phone numbers identified through the requests, but the phone numbers do not appear on the Special Master List.  Therefore, it is unknown whether the calls were recorded.  Plaintiff compared the requests against Securus's CDR and found that 203 phone calls to numbers appearing on the Special Master List were recorded.

CoreCivic and Securus also produced lists of attorney numbers they claim were privatized and the dates on which they were privatized.  546 numbers appear on the CoreCivic lists, and 356 of those appear on the Special Master List.  Securus's CDR reflects that 9,438 calls were recorded to those 356 numbers, and 5,817 calls were placed to the remaining numbers not on the Special Master List.  In addition, CoreCivic data identifies 2,134 phone calls placed to Federal Public Defenders as recorded.  That number reflects only calls made to Federal Public Defenders whose numbers appear on the Special Master List.  Securus's lists show that 161 phone numbers that appear on the Special Master List were allegedly privatized.  Securus did not

provide such data for numbers not appearing on the Special Master List. Securus's lists reflect that 1,627 phone calls were recorded after privatization. (Doc. #179, pp. 3–5).

CoreCivic argues that a class is not ascertainable because Plaintiff's proposed class includes members whose claims correlate to three different wiretap statutes. CoreCivic also takes issue with some of the language used in Plaintiff's proposed class definition, finding it to be vague and overbroad in some instances. Finally, CoreCivic contends that objective criteria are lacking to show that the individual on a recorded call was in fact an attorney or that the inmate on a recorded call was in fact that attorney's client. (Doc. #199, p. 9).

The Court finds that Plaintiff Johnson has demonstrated the class is ascertainable by using "objective criteria" to determine the membership of the proposed class. Plaintiff has analyzed data produced by both CoreCivic and Securus and subpoena of attorney bar records, and has compared such data to the Special Master List to ascertain which attorney-client phone calls were recorded in potential violation of the Wiretap Acts. While the currently available data may not uncover all instances of allegedly unlawful monitoring and recording, it is sufficient to determine class membership, and upon additional discovery and analysis, the class may be further refined. Further, and to address Defendants' concerns about over-inclusive language in Plaintiff's proposed class definition, the Court will amend the class definition at the conclusion of this Order.

## B. Rule 23(a) Requirements

Rule 23(a) states four prerequisites applicable to all proposed classes: (1) the class is so numerous that joinder of all members is impracticable (numerosity); (2) there are questions of law or fact common to the class (commonality); (3) the claims or defenses of the representative party are typical of the claims or defenses of the class (typicality); and (4) the representative

party will fairly and adequately protect the interests of the absent class members (adequacy). Fed. R. Civ. P. 23(a).

### 1. Numerosity

Rule 23(a)(1) requires that "the class is so numerous that joinder of all members is impracticable." In determining whether or not the numerosity requirement is satisfied, "the nature of the action, the size of the individual claims, the inconvenience of trying individual suits, and any other factor relevant to the practicability of joinder is relevant." *Emanuel v. Marsh*, 828 F.2d 438, 444 (8th Cir. 1987), *cert. granted and judgment vacated on other grounds*, 487 U.S. 1229 (1988) (citing *Paxton v. Union Nat. Bank*, 688 F.2d 552, 559–560 (8th Cir. 1982)).

Plaintiff asserts that the class definition satisfies the numerosity requirement because, based on the data produced to date, "18,759 calls were recorded from calls placed to 567 known attorneys appearing on the Special Master List." (Doc. #179, p. 17). Furthermore, 13,315 additional phone calls were made to 580 attorney phone numbers that did not appear on the Special Master List, but were identified through the subpoena of area bar directories. Regarding calls recorded to numbers that were supposed to be designated as privatized, Securus's CDR shows that 9,438 calls were recorded to the 356 numbers that appeared on the Special Master Report, and 5,817 calls were placed to the allegedly privatized numbers that do not appear on the Special Master Report.

CoreCivic argues that the numerosity requirement cannot be met because a proposed class should be limited to the attorneys behind the "14 unique phone numbers associated with post-privatization recordings during the relevant timeframe," which CoreCivic argues is not large enough to satisfy the numerosity prong of the 23(a) analysis. (Doc. #199, p. 22). CoreCivic

bases its numerosity argument on its contention that attorneys who did not request privatization do not have a claim under the Wiretap Acts. The Court is not persuaded by this argument and addressed *supra* its finding that the putative class members have standing.  A merits defense is only appropriate when brought as a summary judgment motion.  *Amgen*, 568 U.S. at 459. Securus made no argument as to numerosity.

From Plaintiff's data analysis, the Court finds the class will likely consist of hundreds of members.  Such a class size exceeds the Eighth Circuit standard for numerosity.  *Ark. Educ. Ass'n v. Bd. Of Educ.*, 446 F.2d 763, 765 (8th Cir. 1971) (20 class members sufficient); *Paxton*, 688 F.2d at 561 (impracticable to join some portion of the 74 black employees of defendant bank who received lesser promotions than their white counterparts).  Accordingly, the Court finds that the class is so numerous that joinder of all members would be impracticable.

### 2.  Commonality

Rule 23(a)(2) requires that "there are questions of law or fact common to the class." "Commonality requires the plaintiff to demonstrate that the class members 'have suffered the same injury,'" which "does not mean merely that they have all suffered a violation of the same provision of law." *Wal-Mart*, 564 U.S. at 349–50.  The "claims must depend upon a common contention" and "[t]hat common contention . . . must be of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id*. at 350.

Plaintiff argues there are many issues common to the class, including:

> (1) whether Defendants had a policy and practice of recording calls;
> (2) whether Defendant had a policy and practice of not advising
>       parties to the calls that telephone calls <u>are in fact</u> recorded;
> (3) whether the Detainee or Attorney consented to the recording
>       (impliedly or otherwise); and

> (4) the monetary and injunctive remedies to which class members are
> entitled.

(Doc. #179, p. 18).

Defendants argue that each putative class member's claim will require "an individualized inquiry . . . especially as it relates to issues such as consent." (Doc. #201, p. 15). More specifically, Defendants assert that detainees consented to the monitoring and recording of phone calls to their attorneys in different ways, including being put on notice of the recording policies at intake and/or orientation, signing the Monitoring Consent Form, receiving a copy of the Inmate Handbook that explains the process for privatization, being exposed to relevant signs and placards near the cell pod phones that warn of possible recording and monitoring, and hearing the pre-recorded warnings upon placing a phone call. (Doc. #199, pp. 6–8). Defendants claim that attorneys also consent by hearing the pre-recorded warnings and potentially by seeing the posted signs within the detention facility. They also maintain that matters surrounding privatization necessitate individualized inquiries.

Plaintiff urges that "consent is a common issue that can be addressed with class-wide proof." (Doc. #179, p. 18). The Court agrees. While there may be some individualized issues to be resolved within the class, they do not defeat the commonality requirement. At the heart of this lawsuit is one common legal question and its corresponding defense: whether Defendants unlawfully intercepted confidential attorney-client conversations and whether either party to those conversations consented to recording. Defendants purport that several federal circuit courts have determined that "an inmate has given implied consent to electronic surveillance when he or she is on notice that his or her telephone call is subject to monitoring and recording and nonetheless proceeds with the call." (Doc. #201, p. 17) (citing *State v. Riley*, 704 N.W.2d 635, 639 (Wis. 2005)). Determination of this central issue will collectively resolve the claims of

16

the class.  Accordingly, Plaintiff has satisfied the commonality requirement.  It is not the Court's role at the class certification stage to make a judgment on the merits.  The Court instead welcomes a timely motion for summary judgment on the issue of consent.

### 3.  Typicality

Rule 23(a)(3) requires that the "claims or defenses of the representative parties are typical of the claims or defenses of the class."  "The burden of demonstrating typicality is fairly easily met so long as other class members have claims similar to the named plaintiff."  *DeBoer v. Mellon Mortg. Co*., 64 F.3d 1171, 1174 (8th Cir. 1995) (citing *Paxton*, 688 F.2d at 562).  Rule 23(a)(3) "requires a demonstration that there are other members of the class who have the same or similar grievances as the plaintiff."  *Donaldson v. Pillsbury Co*., 554 F.2d 825, 830 (8th Cir. 1977).

Plaintiff argues that his claims are typical of those of the putative class members because all claims "derive from the fact that their phone calls and in-person meetings were recorded without consent."  (Doc. #179, p. 19).   Defendants contend that Plaintiff's claims are not typical of the class because he is one of the allegedly few attorneys who requested privatization and still had his calls recorded.  Defendants argue that Plaintiff's claims are not typical of the hundreds or thousands of other attorneys who never requested privatization.  Defendants are silent on how typicality relates to the in-person meeting recordings and recordings that took place after two Courts issued Cease and Desist Orders.

The Court is not persuaded by Defendants' typicality argument.  As discussed in the commonality analysis, the core of the class members' argument is that their attorney-client privileged conversations were illegally recorded.  Plaintiff alleges individually and on behalf of the putative class in his Complaint that "Defendants have been, improperly and without

17

authorization, or consent by either party, recording confidential phone calls and meetings between attorneys . . . and their clients." (Doc. #32, p. 1). Regardless of whether Plaintiff or a class member requested privatization, their allegations remain the same. Accordingly, Plaintiff Johnson's claims are typical of the claims of the class.

### 4. Adequacy

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." The adequacy inquiry seeks to ensure that the named plaintiff has no conflicts of interest with the putative class members. *Amchem Prods., Inc., v. Windsor*, 521 U.S. 591, 625 (1997).

Plaintiff asserts that his interests are coextensive with those of the proposed class members and that he has "retained qualified attorneys who are experienced in class action litigation" and will "vigorously prosecute this action on behalf of Plaintiff and the Class as a whole." (Doc. #179, pp. 20–21). Defendants makes arguments regarding adequacy similar to those that the Court already addressed *supra*, including the idea that Plaintiff does not adequately represent the class members who did not make a privatization request.

The Court finds that Plaintiff Johnson possesses the same interest and claim of injury under the Wiretap Acts as the putative class members and is represented by competent counsel; thus, the adequacy requirement of Rule 23(a) is met.

### C. Rule 23(b) Requirements

In addition to showing that the requirements of Rule 23(a) are met, the party seeking certification "must also satisfy through evidentiary proof at least one of the provisions of Rule 23(b)." *Comcast,* 569 U.S. at 33. Plaintiff Johnson moves for class certification under 23(b)(2) and 23(b)(3). Plaintiff put forth no argument in support of class certification under 23(b)(2) in

either his Motion for Class Certification or his Reply Suggestions in Further Support of the

Motion.  In view of that, the Court will limit its consideration and analysis to Rule 23(b)(3).

Rule 23(b)(3) states:

> (b) [...] A class action may be maintained if Rule 23(a) is satisfied and if:
>
> [...]
>
> (3) the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

### 1.  Common Questions of Law or Fact Predominate

Rule 23(b)(3) does not require a showing that questions common to the class "will be

answered, on the merits, in favor of the class." *Amgen*, 568 U.S. at 459.  Instead, the

requirement that common questions predominate "tests whether proposed classes are sufficiently

cohesive to warrant adjudication by representation." *Blades v. Monsanto Co.*, 400 F.3d 562, 566

(8th Cir. 2005) (quoting *Amchem*, 521 U.S. at 623).  "[T]he court must look only so far as to

determine whether, given the factual setting of the case, if the plaintiff's general allegations are

true, common evidence could suffice to make out a prima facie case for the class." *Id.*

Plaintiff states that the proposed class members' claims center on the question of whether

Defendants violated the Wiretap Acts by recording telephone calls and in-person meetings

between them and their detainee-clients.  He argues that the class as a whole can establish that

"the calls and meetings were recorded; that class members were not adequately, properly, or

unequivocally warned that the calls and meetings would be recorded; that there are no adequate

measures in place to assure that Attorneys and Detainees can have unrecorded communications;

[and] that . . . Defendants did not comply with requirements of the privatization of attorneys'

numbers."  (Doc. #179, p. 22).  Plaintiff further argues that these allegations, in addition to the

19

consent defense discussed *supra*, are class-wide issues that predominate in the lawsuit and that common evidence including Defendants' CDRs and procedures and policies for recording phone calls will establish the class's prima facie case. Finally, Plaintiff asserts that while damage amounts may differ among class members, damages can be uniformly calculated using the Securus CDR.

Defendant CoreCivic contends that the Court would be required to conduct an individualized analysis of the identities of the parties to each relevant telephone call and the nature of each call. Further, CoreCivic argues that the Court would need to undertake an individualized inquiry to determine whether inmates or attorneys had notice of LDC's recording policies or otherwise consented to the recording of their communications. CoreCivic cites *Medina* to support its proposition that under similar facts, the Ninth Circuit affirmed the district court's order denying class certification based on the district court's determination that "adjudicating those claims would require the resolution of numerous individual issues requiring individualized proof." (Doc. #199, p. 25). However, the Ninth Circuit first concluded the proposed class itself was overbroad in that it included "all inmates and attorneys connected to [the jail]." *Medina*, 308 Fed. Appx. at *119–120. The Ninth Circuit's finding that common questions did not predominate was necessarily tied to the overbreadth of the class definition.

Defendant Securus contends that only class members who requested privatization have a claim under the Wiretap Acts and that evidence of such requests will vary from member to member. Securus also argues that the statute of limitations defense, in addition to the consent defense, requires an individualized analysis for each person in the class.

The Court finds that the questions of whether Defendants unlawfully recorded attorney-client communications and whether either party to those communications consented, apply to the

class as a whole and undeniably overcome any questions affecting only individual members. Some individualized effort in ascertaining a class is to be expected in any class certification and does not disprove the overwhelming extent to which these common questions predominate in this lawsuit. "Predominance is a qualitative rather than a quantitative concept. It is not determined simply by counting noses: that is, determining whether there are more common issues or more individual issues, regardless of relative importance." *Parko v. Shell Oil Co.*, 739 F.3d 1083, 1085 (7th Cir. 2014) (citing *Amgen*, 568 U.S. at 468). Further, while Defendants contend that various forms of consent are present in the case, that suggestion only goes to inform the prevailing common legal question of whether such warnings of potential recording and monitoring of communications between attorneys and their detainee-clients rise to the level of consent, which applies to the class as a whole. The evidence presented to answer that question will resolve the case for the entire class. Therefore, questions of law or fact common to the putative class predominate over any questions affecting only individual members and thus, the predominance requirement is met.

### 2. Class Action Is The Superior Method Of Adjudication

Under Rule 23(b)(3), a class action must be the superior method for adjudicating a claim. Relevant factors include:

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions;
> (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;
> (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
> (D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3).

Plaintiff states that a class-wide proceeding is the superior method because the only alternative would be litigating thousands of cases separately. He argues that individual class members are unlikely to have the incentive to litigate individually because of the relatively small amount of damages at stake. He also contends that there is currently no other litigation by any members in the purported class involving the present claims and that there is "no reason to believe that the Western District is an undesirable forum." (Doc. #179, p. 23). Plaintiff notes that any class member may opt out of class treatment if he or she wishes to pursue individual recovery.

Plaintiff suggests that a class action will be manageable. He states that the key evidence in the case will be presented by a small number of witnesses, most of whom are already identified, including personnel of Defendants and class representatives. Plaintiff contends it is unlikely that any individualized evidence will need to be proffered and that damages will be easily calculated as they are fixed under the Wiretap Acts.

Defendant CoreCivic argues that if this case receives class action treatment, class members would have to disclose the existence of attorney-client relationships, which they claim is information that only the client can disclose. CoreCivic also argues that class treatment here would risk prejudicing the claims of a putative class of inmates pursuing claims in the District of Kansas related to the same recordings. Finally, CoreCivic suggests that the putative class members have enough incentive to bring their own individual claims under the Wiretap Acts because they allow for recovery of attorney's fees, costs, and in some cases, punitive damages. Defendant Securus argues similarly that the proposed class members' claims are worth an amount of damages large enough to incentivize bringing their own claims. Securus also argues that Missouri is not an appropriate forum in which to concentrate the litigation, alleging that no

22

act relevant to these claims occurred in Missouri, even though the Western District of Missouri sends the majority of its pre-trial detainees to LDC, the majority of attorneys in the class are Missouri residents, and neither Defendant has challenged this Court's prior Order of August 19, 2016, prohibiting the recording of attorney-client privileged conversations.

The Court finds that, upon inquiry into the factors to be considered under the superiority requirement of Rule 23(b)(3), class action is the superior method for fairly and efficiently adjudicating the present controversy. It would be judicially uneconomical for the Court to entertain hundreds if not thousands of individualized claims when the putative class members seek an answer to the same question: whether Defendants unlawfully intercepted attorney-client privileged communications in violation of the Wiretap Acts. To the extent any class member wishes to opt out and pursue his or her own individual claim, he or she may do so under Rule 23(b)(3). Neither party has claimed that any litigation concerning the present controversy has already been brought by any member of the putative class. Concentrating the class action in the Western District of Missouri is desirable considering many members of the class practice law in or near Kansas City, Missouri; many of the telephone conversations at issue transpired in or near Kansas City, Missouri; and LDC is located at a relatively short distance from Kansas City, Missouri. Finally, the Court does not foresee any extraordinary difficulties in managing this lawsuit as a class action.

## IV. Conclusion

This Court alters the proposed class definition based upon the timing of this Court's Cease and Desist Order and the timing of Securus's contract termination. The Court expects to be addressing the issue of consent in a summary judgment motion in the near future and desires for the parties to address the legal effect of this Court's Order of August 19, 2016 on consent

23

under the various Wiretap Acts. The Court is also interested in the parties addressing consent arguments on the recording of in-person meetings between attorneys and clients, both before and after this Court's Cease and Desist Order of August 19, 2016.

Based on the foregoing, Plaintiffs' Consolidated Motion for Class Certification (Doc. #179) is granted. Accordingly, it is hereby

**ORDERED** that pursuant to Federal Rules of Civil Procedure 23(a) and (b)(3), the Court certifies this matter as a class action. The classes are defined as follows:

> All attorneys who represented clients who were detained at LDC, from August 31, 2013 to August 19, 2016, plus periods of tolling, who communicated with clients, and whose communications were intercepted, disclosed or used by Securus and/or its affiliates.

> All attorneys who represented clients who were detained at LDC, from August 19, 2016 to June 28, 2017, plus periods of tolling, who communicated with clients, and whose communications were intercepted, disclosed or used by Securus and/or its affiliates.

> All attorneys who represented clients who were detained at LDC, from August 31, 2013 to August 19, 2016, plus periods of tolling, who communicated with clients, and whose communications were intercepted, disclosed or used by CoreCivic and/or its affiliates.

> All attorneys who represented clients who were detained at LDC, from August 19, 2016 to present, plus periods of tolling, who communicated with clients, and whose communications have been or are currently being intercepted, disclosed or used by CoreCivic and/or its affiliates.

**IT IS FURTHER ORDERED** that David Johnson is designated as the Class Representative.

**IT IS FURTHER ORDERED** that Michael Hodgson, Lance Sandage, and Joseph Eischens of the Hodgson Law Firm, LLC will serve as Class Counsel.

**IT IS FURTHER ORDERED** that the parties meet and confer within fourteen (14) days to arrange a court hearing on how to proceed with the filing of dispositive motions and the timing of class notifications.

**IT IS SO ORDERED.**

/s/ Stephen R. Bough
STEPHEN R. BOUGH
UNITED STATES DISTRICT JUDGE

Dated: September 17, 2018