# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF MISSOURI
## WESTERN DIVISION

| | | |
|---|---|---|
| DAVID JOHNSON, on behalf of himself and all others similarly situated, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No.  4:16-CV-00947-SRB |
| CORECIVIC, *et alia,* | ) ) | |
| Defendants. | ) | |

## PLAINTIFFS' UNOPPOSED MOTION FOR
## PRELIMINARY APPROVAL OF AMENDED SETTLEMENT AGREEMENT

Respectfully submitted,

/s/ *Lance D. Sandage*
Lance D. Sandage, MO Bar #46022
SANDAGE LAW LLC
1600 Genessee Street, Suite 655
Kansas City, MO 64102
Tel: 816.753.0800
Fax: 816.735.4602
lance@sandagelaw.com

/s/ *Michael A. Hodgson*
Michael A. Hodgson, MO Bar #63677
3609 SW Pryor Rd
Lee's Summit, MO 64082
Telephone:     (816) 600-0117
mike@thehodgsonlawfirm.com

/s/ *Joseph K. Eischens*
Joseph K. Eischens, MO Bar #44706
Law Office of Joseph K. Eischens
8013 Park Ridge Dr.
Parkville, MO 64152
joe@jkmediation.com

***Counsel for Plaintiffs and
the Proposed Settlement Class***

i

# **TABLE OF CONTENTS**

I.      Introduction ................................................................................................................ 1

II.     Procedural History ...................................................................................................... 4

III.    Settlement Overview ................................................................................................... 5

IV.     Legal Standard ............................................................................................................ 7

V.      The Settlement Approval Process ............................................................................... 8

VI.     The Settlement Satisfies Rule 23(e)'s Factors .......................................................... 9

    A.   The Settlement Class Representatives and Class Counsel have adequately represented the Settlement Class. ................................................................................................... 10

    B.   The settlement was negotiated at arm's length. ............................................... 12

    C.   The relief provided for the Settlement Class is adequate. ............................... 13

        *1.   The costs, risks, and delay of trial and appeal.* ...................................... 13

        *2.   The effectiveness of administration.* ...................................................... 14

        *3.   The proposed attorney's fees.* ................................................................ 15

        *4.   The proposal treats class members equitably.* ....................................... 18

    D.   The Experience and Views of Counsel. ........................................................... 18

    E.   The Requested Service Awards Are Reasonable. ........................................... 19

VII.    CLASS CERTIFICATION FOR SETTLEMENT PURPOSES IS APPROPRIATE. .............................. 23

    A.   Plaintiffs' Claims Satisfy Rule 23(a). ............................................................. 24

        *1.   The Settlement Class satisfies numerosity.* ........................................... 24

        *2.   Common issues of law or fact will govern the litigation.* ...................... 24

        *3.   Plaintiffs' claims are typical.* ................................................................ 25

        *4.   Plaintiffs and Class Counsel are adequate.* ........................................... 25

    B.   The Settlement Class Satisfies Rule 23(b)(3). ................................................ 26

        *1.   Questions of law or fact predominate.* ................................................... 26

        *2.   The Settlement Class satisfies superiority.* ........................................... 27

VIII.   Conclusion ................................................................................................................ 28

## TABLE OF AUTHORITIES

**Cases**

*Alpern v. UtiliCorp United, Inc.*, 84 F.3d 1525 (8th Cir. 1996) ................................................... 25

*Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997) .................................................... 23, 25, 26

*Amgen, Inc. v. Comm. Retirement Plans & Trust Funds*, 568 U.S. 455 (2013) .......................... 26

*Ashley v. Reg'l Transp. Dist.*, No. 05-01567, 2008 WL 384579 (D. Colo. Feb. 11, 2008) .......... 12

*Barfield v. Sho-Me Power Elec. Co-op.*, No. 11-04321, 2013 WL 3872181 (W.D. Mo. July 25, 2013) .................................................................................................................................... 28

*Bellows v. NCO Fin. Sys., Inc.*, No. 3:07-cv-01413, 2008 WL 5458986 (S.D. Cal. Dec. 10, 2008) ............................................................................................................................................. 8

*Blades v. Monsanto Co.*, 400 F.3d 562 (8th Cir. 2005) ............................................................... 27

*Boeing Co. v. Van Gemert*, 444 U.S 472, 62 L. Ed. 2d 676, 100 S. Ct. 745 (1980) .................... 16

*Claxton v. Kum & Go, L.C.*, No. 16-3385, 2015 WL 3648776 (W.D. Mo. June 11, 2015) ......... 22

*Cohn v. Nelson*, 375 F. Supp. 2d 844 (E.D. Mo. 2005) ................................................................. 7

*Comcast Corp. v. Behrend*, 569 U.S. 27 (2013) ......................................................................... 23

*Cook v. Niedert*, 142 F.3d 1004 (7th Cir. 1998). .......................................................................... 20

*Cope v. Let's Eat Out Inc.*, 319 F.R.D. 544 (W.D. Mo. 2017) .............................................. 25, 27

*Cromeans v. Morgan Keegan & Co.*, 303 F.R.D. 543 (W.D. Mo. 2014) .............................. 24, 25

*Day v. Celadon Trucking Servs.*, Inc., 827 F. 3d 817 (8th Cir. 2016) ......................................... 27

*DeBoer v. Mellon Mort. Co.*, 64 F.3d 1171 (8th Cir. 1995) ........................................................ 25

*Denny v. Jenkins & Gilchrist*, 2005 WL 388562 (S.D.N.Y. 2005) .............................................. 21

*Hale v. Wal-Mart Stores, Inc.*, Nos. 01CV218710, 02CV227674, 2009 WL 2206963 (Mo. Cir. Ct. Jackson Cty. May 15, 2009) .................................................................................................. 18

*Hensley v. Eckerhart*, 461 U.S. 424 (1983) ................................................................................ 16

*Hermsen v. City of Kansas City*, No. 11-753 (W.D. Mo. Sept. 22, 2014) .................................... 22

*Ingram v. Coca-Cola*, 200 F.R.D. 685 (N.D. Ga. 2001) .............................................................. 20

*In re BankAmerica Corp. Sec. Litig.*, 210 F.R.D. 694 (E.D. Mo. 2002) ...................................... 18

*In re BankAmerica Corp. Securities Litig.*, 228 F. Supp. 2d 1061 (E.D. Mo. 2002)................... 17

*In re Charter Communications, Inc. Securities Litig.*, No. MDL1506; 02-1186; 2005 WL 4045741 (E.D. Mo. June 30, 2005)............................................................................................................... 17

*In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Products Liab. Litig.*, 55 F.3d 768 (3d Cir. 1995) ............................................................................................................................................... 7

*In re Giant Interactive Grp., Inc. Sec. Litig.*, 279 F.R.D. 151 (S.D.N.Y. 2011) ................... 17, 18

*In re Heartland Payment Sys., Inc. Customer Data Sec. Breach Litig.*, 851 F. Supp. 2d 1040 (S.D. Tex. 2012) ................................................................................................................................... 15

*In re Indep. Energy Holdings PLC Sec. Litig.*, 302 F.Supp.2d 180 (S.D.N.Y. 2003) ................. 15

*In re Jackson Lockdown/MCO Cases*, 107 F.R.D. 703 (E.D. Mich. 1985)................................. 21

*In re Serzone Products Liability Litig.*, 231 F.R.D. 221 (S.D. W.Va. 2005)............................... 14

*In re Smithkline Beckman Corp. Securities Litig.*, 751 F. Supp. 525 (E.D. Pa. 1990) ................ 21

*In re U.S. Bancorp Litig.*, 291 F.3d 1035 (8th Cir. 2002).................................................... 16, 17

*In re Uponor, Inc., F1807 Plumbing Fittings Products Liab. Litig.*, 716 F.3d 1057 (8th Cir. 2013) .......................................................................................................................................................... 8

*In re Xcel Energy, Inc. Sec. Derivative & ERISA Litig.*, 364 F. Supp. 2d 980 (D. Minn. 2005) ................................................................................................................................................... 16, 17

*Johnson v. Casey's Marketing Co.*, No. 15-03086, 2015 WL 12806576 (W.D. Mo. Dec. 12, 2015) .......................................................................................................................................................... 22

*Johnson v. Comerica Mortg. Corp*, 83 F.3d 241 (8th Cir. 1996) ................................................ 16

*Liles v. Del Campo*, 350 F.3d 742 (8th Cir. 2003)......................................................................... 8

*Little Rock Sch. Dist. v. Pulaski County Special Sch. Dist. No. 1*, 921 F.2d 1371 (8th Cir. 1990) .......................................................................................................................................................... 7

*Marcus v. Kan.*, 2069 F. Supp. 2d 1179 (D. Kan. 2002) ............................................................ 12

*Marshall v. Nat'l Football League*, 787 F.3d 502 (8th Cir. 2015) ................................................ 8

*Mullins v. Direct Digital, LLC*, 795 F.3d 654 (7th Cir. 2015)..................................................... 28

*Parko v. Shell Oil Co.*, 739 F.3d 1083 (7th Cir. 2014) ................................................................ 27

*Paxton v. Union Nat. Bank*, 688 F.2d 552 (8th Cir. 1982) ........................................................... 26

*Petrovic v. Amoco Oil Co.*, 200 F.3d 1140 (8th Cir. 1999) ..................................................... 7, 16

*Rawa v. Monsanto Co.*, No. 17-1252, 2018 WL 2389040 (E.D. Mo. May 25, 2018)................. 23

*Roberts v. Texaco*, 979 F. Supp. 185 (S.D.N.Y. 1997)......................................................... 20, 21

*Sanderson v. Unilever Supply Chain, Inc.*, 10-cv-00775-FJG, 2011 WL 5822413 (W.D. Mo. Nov. 16, 2011) ..................................................................................................................... 18

*Schoenbaum v. E.I. Dupont De Nemours & Co.*, 4:05-CV-01108, 2009 WL 4782082 (E.D. Mo. Dec. 8, 2009)........................................................................................................................... 8

*Sheppard v. Consolidated Edison*, 2000 U.S. Dist. LEXIS 20629 (E.D.N.Y. 2000) .................. 21

*Stephens v. U.S. Airways Group, Inc.*, 102 F. Supp. 3d 222 (W.D. Mo. Nov. 16, 2011)............. 8

*Thornton v. East Texas Motor Freight*, 497 F.2d 416 (6th Cir. 1974) ........................................ 21

*Tussey v. ABB, Inc.*, No. 06-04305, 2012 WL 5386033 (W.D. Mo. Nov. 2, 2012) .................... 22

*Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036 (2016) ........................................................ 27

*Van Vranken v. Atlantic Richfield*, 901 F. Supp. 294 (N.D. Cal. 1995). .................................... 20

*Varacallo v. Mass. Mut. Life Ins. Co.*, 226 F.R.D. 207 (D.N.J. 2005) ........................................ 15

*Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011) ................................................................ 24

*Yarrington v. Solvay Pharm., Inc.*, 697 F. Supp. 2d 1057 (D. Minn. 2010)................................ 17

**Rules**

Fed. R. Civ. P. 23 ................................................................................................................... 15, 23

Fed. R. Civ. P. 23(a) ............................................................................................................. 23, 24

Fed. R. Civ. P. 23(a)(2) ............................................................................................................... 24

Fed. R. Civ. P. 23(a)(3) ............................................................................................................... 25

Fed. R. Civ. P. 23(a)(4) ......................................................................................................... 25, 26

Fed. R. Civ. P. 23(b)(3)..................................................................................................... 23, 26, 27

Fed. R. Civ. P. 23(e)(1).............................................................................................................. 9, 23

Fed. R. Civ. P. 23(e)(2) ............................................................................... 9, 10

 Fed. R. Civ. P. 30(b)(6) ................................................................................. 10

**Other Authorities**

2 Joseph M. McLaughlin, MᴄLᴀᴜɢʜʟɪɴ ᴏɴ Cʟᴀss Aᴄᴛɪᴏɴs, § 6:24 (8th ed. 2011) ................. 18

4 Alba Conte & Herbert Newberg, Newberg on Class Actions § 11.25, at 38-39 (4th ed. 2011).. 8

Manual for Complex Litigation (4th ed. 2004) ......................................................... 8, 9

Manual for Complex Litigation (3d ed. 1997) ........................................................... 18

4 Newberg on Class Actions § 11.41 ...................................................................... 8

# I.     INTRODUCTION

For the past three and a half years, Plaintiffs, a certified class of attorneys have been in litigation with Defendants Corecivic (formerly known as Corrections Corporation of America), and its telephone services provider, Securus Technologies, Inc. for violations of state and federal wiretapping laws, in which they allege that Defendants improperly recorded conversations between attorneys and their clients and subsequently disseminated that information to law enforcement officials and other third parties. The litigation has, at all times, been contentious, highly contested and risky. The parties, with the help of Mediator Hunter Hughes, have agreed to resolve the asserted claims.

In this Motion, Named Plaintiff David Johnson ("Plaintiff") seeks, and Defendants Corecivic, Inc. and Securus Technologies, Inc. (collectively, "Defendants") do not oppose, the certification of a collective of individuals as defined in the Court's Order on September 18, 2018 certifying the class (ECF No. 212) and under Rule 23 of the Federal Rules of Civil Procedure (collectively, the "Rule 23 Class"), approval of the settlement terms reached between Plaintiff and Defendants memorialized in the settlement agreement submitted with this Motion (the "Settlement Agreement" attached as Exhibit 1), and approval of the notice and claims submission process outlined in the Settlement Agreement.

Plaintiff alleges that Defendants violated federal, Missouri and Kansas wiretap statutes by improperly recording (and disseminating) calls between attorneys (Plaintiffs) and their clients (detainees) at the Corecivic detention facility in Leavenworth, Kansas ("LDC"). In addition, Plaintiff alleges that Corecivic violated federal and Kansas wiretap statutes by improperly recording (and disseminating) in-person meetings between attorneys (Plaintiffs) and their clients (detainees) at LDC. The parties have agreed to settle. The settlement terms, if approved, would cause full recovery for all members of the Rule 23 Class based on data provided by Defendants.

1

The Settlement includes a gross cash payment of Three Hundred and Ninety Five Dollars ($3,700,000.00) (the "Gross Settlement Amount"). The net settlement fund will be paid upon a class member submitting a claim form. Upon submission of a claim for, the class member will release his or her federal and state law claims. The Rule 23 Class as defined by the Court includes:

All attorneys who represented clients who were detained at LDC, from August 31, 2013 to August 19, 2016, plus periods of tolling, who communicated with clients, and whose communications were intercepted, disclosed or used by Securus and/or its affiliates.

All attorneys who represented clients who were detained at LDC, from August 19, 2016 to June 28, 2017, plus periods of tolling, who communicated with clients, and whose communications were intercepted, disclosed or used by Securus and/or its affiliates.

All attorneys who represented clients who were detained at LDC, from August 31, 2013 to August 19, 2016, plus periods of tolling, who communicated with clients, and whose communications were intercepted, disclosed or used by CoreCivic and/or its affiliates.

All attorneys who represented clients who were detained at LDC, from August 19, 2016 to present, plus periods of tolling, who communicated with clients, and whose communications have been or are currently being intercepted, disclosed or used by CoreCivic and/or its affiliates.

As agreed to the Parties in the attached Settlement Agreement, the Plaintiffs and Defendants stipulate and agree that the Settlement Class, including Settlement Subclass A and Settlement Subclass B, as set out below are properly certifiable, solely for settlement, under Fed.

R. Civ. P. 23 as a subsection (b)(3) class, in that the elements of Fed. R. Civ. P. 23(a)(1-4) are satisfied, and common issues of law and fact predominate over individual questions regarding the issues related to approval of this Settlement Agreement is appropriate.

Settlement Class

All attorneys who, during the period of August 31, 2013 through May 10, 2020, communicated with clients who were detained at Leavenworth Detention Center and whose communications were intercepted, monitored, recorded, disclosed, or used by CoreCivic, Securus, and/or their affiliates.

Settlement Subclass A

All members of the Settlement Class who had one or more of their telephone communications with clients at Leavenworth Detention Center intercepted, monitored, recorded, disclosed, or used by CoreCivic, Securus, and/or their affiliates during the period of August 31, 2013 through May 10, 2020.

Settlement Subclass B

All members of the Settlement Class who had one or more of their in-person, with clients at Leavenworth Detention Center intercepted, monitored, recorded, disclosed, or used by CoreCivic, Securus, and/or their affiliates during the period of August 31, 2013 through May 10, 2020.

3

Class members will be notified by notice via US Mail, and email notice (for those class members for whom the parties have an email address). Class members who have not submitted a claim will receive a reminder notice postcard 30 days after the original notice. The settlement terms are fair, reasonable, and beneficial to the putative Rule 23 Class members and should be approved.

## II.   PROCEDURAL HISTORY

On August 31, 2016, Plaintiff, Adam Crane [1], sued Defendants alleging Defendants violated Kansas and Missouri wiretapping statutes, K.S.A. 2-2502, *et. seq.*, and RsMo 542.010, *et. seq. See* ECF No. 1. Plaintiff filed an Amended Complaint adding named plaintiff David Johnson on November 23, 2016. *See* ECF No. 5. A Second Amended Complaint was filed was filed on December 13, 2016. *See* ECF No. 10. On March 8, 2017, The Third Amended Complaint added Count III – violation of the Federal Wiretap Act (18 U.S.C. § 2510, *et. seq.*). *See* ECF No. 32. The Third Amended Complaint has been the operative Complaint for the ongoing litigation.

The parties have conducted extensive discovery. Depositions have been conducted, numerous requests for production have been issued and the parties have exchange interrogatories. The parties have engaged in voluminous exchange and analysis of ESI, including millions of phone call records, 5 separate bar directories, and thousands of privatization events to ascertain how many phone calls were recorded. Defendant Corecivic filed a Motion to Dismiss the Third Amended Complaint on November 6, 2017. *See* ECF No. 104. The Plaintiff responded and on January 2, 2018, the Court denied the Motion to Dismiss. *See* ECF No. 137. On September 18, 2018, the

---

[1] At Plaintiff's request, Adam Crane dismissed from the lawsuit as a named plaintiff on March 26, 2018. *See,* ECF No. 157.

4

Court granted the Motion for Class Certification with a modified class definition. *See* ECF No. 212.

Following the Court granting Class Certification, the Defendants filed a 23(f) appeal with the Eighth Circuit Court of Appeals. On January 7, 2019, the Eighth Circuit Court of Appeals denied the 23(f) appeal of both Defendants.

On December 3, 2019, this case was mediated before Hunter Hughes, a nationally recognized class action mediator. The mediation on December 3, 2019 was between Plaintiff and Defendant Securus Technologies, Inc. The case was not resolved. All parties agreed to mediate the case with Mr. Hughes on January 24, 2020. Because of the mediation on January 24, 2020, the parties signed a preliminary agreement memorialized by a settlement term sheet to resolve the case. The parties originally finalized a Settlement Agreement memorializing their agreement.

III.     SETTLEMENT OVERVIEW

The main terms of the settlement agreement are:

- The settlement creates a common fund of $3,700,000.00 to resolve the claims of approximately 750 class members;

- Administration of the settlement will be paid from the common fund;

- The Net Settlement Fund will substantially compensate class members for alleged violations of the wiretap acts;

- Class Members will receive a long-form notice informing them of their approximate settlement payment (free and clear of attorneys' fees, lawsuit costs,

and administrative costs). The notices will indicate that more information is available on the Settlement Administrator's website. The notice will also inform these individuals of their right to participate in the settlement, opt out, or object to the settlement if they so choose and that, if they participate in the settlement, they will release any wiretapping claims they may have against Defendants. Email notice will also be sent to the class members for whom the parties have an email address;

- Claims may be submitted by signing and returning the postcard or submitted online with the Claims Administrator. See Exhibit 2 is the notice that will be mailed to putative class members where mailing is possible;

- If the Court preliminarily approves the terms of the parties' Settlement Agreement, a final approval and fairness hearing will be held on a date scheduled by the court (approximately 4 months after preliminary approval);

- Rule 23 Class members that opt out of participation in the settlement will preserve any claims against Defendants but will not receive a settlement payment;

- Any unclaimed portions of the Gross Settlement Amount that remain following the claims period will be re-allocated to the participating class members up to a total recovery of $10,000.00 per participating class member with any amounts above

$10,000.00 per class member shall be subject of a *cy pres* donation, the beneficiary of which will be selected by agreement of all parties and approved by the Court;

- Plaintiffs' counsel seeks attorneys' fees in the amount of 35% ($1,295,000.00) of the Gross Settlement Amount. This amount is intended to cover reasonable attorney fees, as well as costs incurred in the litigation;

- In recognition of the service contributions of Named Plaintiff David Johnson and former named Plaintiff Adam Crane, the Named Plaintiff seeks a service award in the amount of $25,000.00 for each Plaintiff David Johnson and Plaintiff Adam Crane.

## IV. LEGAL STANDARD

"The law strongly favors settlements." *Little Rock Sch. Dist. v. Pulaski County Special Sch. Dist. No. 1*, 921 F.2d 1371, 1383 (8th Cir. 1990); *see also Petrovic v. Amoco Oil Co.*, 200 F.3d 1140, 1148 (8th Cir. 1999) ("A strong public policy favors [settlement] agreements, and courts should approach them with a presumption in their favor."). This preference is strong "in class actions and other complex cases where substantial judicial resources can be conserved by avoiding formal litigation." *Cohn v. Nelson*, 375 F. Supp. 2d 844, 852 (E.D. Mo. 2005) (quoting *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Products Liab. Litig.*, 55 F.3d 768, 784 (3d Cir. 1995)).

7

Courts adhere to "an initial presumption of fairness when a proposed class settlement, which was negotiated at arm's length by counsel for the class, is presented for court approval." 4 Newberg on Class Actions § 11.41; *see also Marshall v. Nat'l Football League*, 787 F.3d 502, 508 (8th Cir. 2015) ("A Settlement agreement is 'presumptively valid.'") (quoting *In re Uponor, Inc., F1807 Plumbing Fittings Products Liab. Litig.*, 716 F.3d 1057, 1063 (8th Cir. 2013)). The judgment of class counsel in entering into a proposed class settlement is an important consideration. *Stephens v. U.S. Airways Group, Inc.*, 102 F. Supp. 3d 222, 229 (W.D. Mo. Nov. 16, 2011) (crediting the judgment of class counsel experienced in litigating and settling complex cases, including class actions, settlement was fair, reasonable, and adequate); *Bellows v. NCO Fin. Sys., Inc.*, No. 3:07-cv-01413, 2008 WL 5458986, *8 (S.D. Cal. Dec. 10, 2008) ("it is the considered judgment of experienced counsel that this settlement is fair, reasonable, and adequate settlement of the litigation, which should be given great weight.").

Plaintiffs' Motion follows the factors outlined in Rule 23(e) but also addresses miscellaneous factors analyzed by this and other courts. Under any standard, the settlement is fair, reasonable, and adequate.

## V. THE SETTLEMENT APPROVAL PROCESS

Approval of a Rule 23 class settlement involves a two-step process. Manual for Complex Litigation, § 21.632 (4th ed. 2004); 4 Alba Conte & Herbert Newberg, Newberg on Class Actions § 11.25, at 38-39 (4th ed. 2011); *see also Schoenbaum v. E.I. Dupont De Nemours & Co.*, 4:05-CV-01108, 2009 WL 4782082, at *2 (E.D. Mo. Dec. 8, 2009) ("As a practical matter, evaluation of a settlement usually proceeds in two stages; before scheduling the fairness hearing, the court makes preliminary determinations with respect to the fairness of the settlement terms, approves the means of notice to class members, and sets the date for that final hearing.") (*citing* Manual § 21.632 and *Liles v. Del Campo*, 350 F.3d 742, 745 (8th Cir. 2003)).

8

During the first step, counsel submits the proposed terms of settlement and the court makes a preliminary fairness evaluation. If the court is likely to approve the settlement, then it should grant preliminary approval and direct that notice under Rule 23(e) be given to class members of a formal fairness hearing, at which objections may be heard (the second step). *See* Manual § 21.633; Rule 23(e)(1).

This case is at the first stage of the settlement process, often called "preliminary approval" where the Court decides whether it is likely to approve the settlement so notice of the settlement should be sent to the class. The newly-amended Rule 23(e)(1) states that to send notice of settlement to the class, the Court must first find that the Court will likely:

1)      "approve the proposal under Rule 23(e)(2)"; and

2)      "certify the class for purposes of judgment . . .."

At this first step of the process, Plaintiffs request that the Court grant "preliminary approval" of the Rule 23 settlement and order that notice should be sent to the class; consistent with the settlement, Defendants does not object to Plaintiffs' request.

## VI.      THE SETTLEMENT SATISFIES RULE 23(E)'S FACTORS

In evaluating the fairness of the settlement, courts consider the factors articulated in Rule 23(e)(2), which include whether:

(A) the class representatives and class counsel have adequately represented the

class;

(B) the proposal was negotiated at arm's length;

(C) the relief provided for the class is adequate, taking into account:

(i)      the costs, risks, and delay of trial and appeal;

(ii)      the effectiveness of any proposed method of distributing relief to the

class, including the method of processing class-member claims;

9

(iii)    the terms of any proposed award of attorney's fees, including timing

of payment; and

(iv)    any agreement required to be identified under Rule 23(e)(3); and

(D) the proposal treats class members equitably relative to each other.

According to the Advisory Committee notes: "The goal of this amendment is not to displace any factor, but rather to focus on the court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approval the proposal." 2018 Advisory Committee Notes.

### A.    The Settlement Class Representatives and Class Counsel have adequately represented the Settlement Class.

The Settlement Class Representatives and Class Counsel have adequately represented the Settlement Class since the litigation was commenced in 2016. Class Counsel have engaged in extensive discovery, motion practice including a 23(f) appeal of Class Certification; these efforts involved complicated and nuanced questions of consent, waiver and immunity. Class Counsel have vigorously pursued discovery, resulting in the production of thousands of documents by Defendants, and the deposition of Defendants' corporate representatives under Fed. R. Civ. P. 30(b)(6). Class Counsel also have engaged with Plaintiffs in responding to discovery propounded by Defendants. Class Counsel have diligently prosecuted the Actions for almost four years and they have ably represented the Settlement Class' interests in the litigation.[2]

Similarly, Plaintiffs have actively participated, including responding to written discovery (Johnson and Crane); assisting with other discovery; participating in alternative dispute resolution

---

[2] On February 8, 2017, the Court ordered that Michael Hodgson, Joseph Eischens and Lance Sandage be appointed interim Class Counsel. *See* ECF No. 26 (minute entry).

proceedings; Johnson availing himself for a deposition; Johnson being available for two all-day mediations.

After significant litigation and extensive negotiation, the parties reached a proposed agreement on behalf of the following class:

Settlement Class

All attorneys who, during the period of August 31, 2013 through May 10, 2020, communicated with clients who were detained at Leavenworth Detention Center and whose communications were intercepted, monitored, recorded, disclosed, or used by CoreCivic, Securus, and/or their affiliates.

Settlement Subclass A

All members of the Settlement Class who had one or more of their telephone communications with clients at Leavenworth Detention Center intercepted, monitored, recorded, disclosed, or used by CoreCivic, Securus, and/or their affiliates during the period of August 31, 2013 through May 10, 2020.

Settlement Subclass B

All members of the Settlement Class who had one or more of their in-person, with clients at Leavenworth Detention Center intercepted, monitored, recorded, disclosed, or used by CoreCivic, Securus, and/or their affiliates during the period of August 31, 2013 through May 10, 2020.

**B.     The settlement was negotiated at arm's length.**

The settlement was fairly and honestly negotiated. "The fairness of the negotiating process is to be examined in the light of the experience of counsel, the vigor with which the case was prosecuted, and [any] coercion or collusion that may have marred the negotiations themselves." *Ashley v. Reg'l Transp. Dist.*, No. 05-01567, 2008 WL 384579 (D. Colo. Feb. 11, 2008) (internal quotation omitted). "When a settlement is reached by experienced counsel after negotiations in an adversarial setting, there is an initial presumption that the settlement is fair and reasonable." *Marcus v. Kansas*, 2069 F. Supp. 2d 1179, 1182 (D. Kan. 2002).

After almost four years of vigorous litigation, the settlement was honestly and fairly negotiated by competent counsel and involved the assistance of a well-respected mediator. Defendants disagreed with Plaintiffs' legal and factual positions at every step, including on several threshold issues such as waiver and consent. The parties exchanged significant written discovery, took depositions, litigated a motion for class certification and completed a 23(f) appeal of the order for class certification.

The parties' alternative dispute resolution efforts also reflect the arms-length nature of the settlement. Prior to their successful mediation in early 2020, the parties engaged in alternative dispute resolution mechanisms, including an Early Neutral Evaluation performed by a private mediator in April 2017, and a mediation in late 2019; no efforts succeeded. Only after years of vigorous and contested litigation did the parties agree to mediate the cases on a global basis with Hunter Hughes. The mediation with Hughes lasted all-day without an agreement. In fact, the parties did not reach an agreement in principle until weeks later and after several more rounds of discussions with the mediator culminating with the parties accepting a mediator's proposal. The parties then continued to negotiate the initial term sheet and the entire final settlement agreement

over several more months. Under these circumstances it cannot be questioned that the agreement was reached at arm's length.

## C. The relief provided for the Settlement Class is adequate.

This settlement provides significant relief to Settlement Class members and compensates them fairly for their claims and is well within the range of settlements of similar cases, particularly given these factors:

### 1. The costs, risks, and delay of trial and appeal.

The parties naturally dispute the strength of Plaintiffs' cases, and the settlement reflects the parties' compromise of their assessments of the worst-case and best-case scenarios, weighing various potential outcomes. Plaintiffs' best-case scenario is class certification, a denial of decertification, and recovery on the merits. Plaintiffs' worst-case scenario is that the class certification under Rule 23 is declassified, summary judgment is granted to Defendant(s), and/or Plaintiffs lose. Even if these cases were to proceed to trial and Plaintiffs prevailed on the question of liability, substantial questions may remain as to the measure of damages and the entitlement of each Settlement Class member to recover. Although Plaintiffs believe strongly in the merits of their claims, the many uncertainties support a guaranteed resolution.

This case is complex and carries significant risks for the parties as to both legal and factual issues, and litigating the case to trial would likely consume great time and expense. The remaining discovery, summary judgment motion practice, trial and appeal would consume more time and resources. Plaintiffs will likely have brought multiple witnesses for several days of preparation and testimony, at great expense to the parties and inconvenience to the witnesses. The Defendants would also incur similar expense and inconvenience to its witnesses. And regardless of the outcome, a lengthy appeal would be likely.

The settlement provides monetary relief to class members within the proposed Settlement Class and its subclasses. Class members will be included in the settlement unless they opt out. The parties can determine eligible class members by doing statistical analysis using information provided during discovery including the rolls of attorneys in various states, the list of known attorney numbers provided by the Special Master, Call Detail Reports using the Securus platform and review of attorney in-person visit logs provided by CoreCivic. And, because of the *cy pres* provision, the settlement guarantees that Defendants could distribute a significant portion of the cash fund to beneficiaries approved by the Court.

The settlement brings substantial and certain injunctive and monetary value to the Settlement Class now, rather than uncertain value to an uncertain number of people at an uncertain time after protracted litigation involving complex and changing law.

### 2.    *The effectiveness of administration.*

The parties have agreed to retain Analytics as the Notice and Claims Administrator ("the Administrator"). Analytics' qualifications and the proposed Notice Plan is outlined in the Declaration of Richard Simmons on behalf of Analytics, attached as Exhibit 3.

Analytics has extensive experience administering class actions, having serviced over 1000 matters during its 50 year history. Ex. 3 at ¶ 1. Federal courts have entrusted Analytics with administering nationwide settlement processes in dozens of cases across the country. *Id.* at ¶ 3-4.

For this case, the Administrator has formulated a robust notice plan that encompasses several platforms, including a settlement website and multi-layer digital marketing. During the notice period, Analytics anticipates the campaign will reach approximately 100% of the settlement class.

This extensive notice plan is more than sufficient in a consumer class action like this case. *See, e.g.*, *In re Serzone Products Liability Litig.*, 231 F.R.D. 221, 236 (S.D. W.Va. 2005)

(holding the notice plan designed to effectively reach approximately 80% of class members comports with the requirements of due process and Federal Rules of Civil Procedure 23(c)(2) and 23(e)); *In re Heartland Payment Sys., Inc. Customer Data Sec. Breach Litig.*, 851 F. Supp. 2d 1040, 1061 (S.D. Tex. 2012) (approving a notice plan that was estimated to reach 81.4% of class members).

The Notice Plan will clearly inform Settlement Class Members of their rights to object, or to file a claim, and the mechanisms and deadlines, and will include the information required by Rule 23. The proposed long-form notice is attached as Exhibit 2 for the Court's consideration. It contains the information required by Rule 23, and it closely tracks the model notice promulgated by the Federal Judicial Center, which is the education and research agency for the federal courts. Indeed, the FJC's illustrative notice that supports the proposed long-form notice in this case is recognized as the leading model for notice in class actions. *See, e.g., Varacallo v. Mass. Mut. Life Ins. Co.*, 226 F.R.D. 207, 224 (D.N.J. 2005); *In re Indep. Energy Holdings PLC Sec. Litig.*, 302 F.Supp.2d 180, 185 (S.D.N.Y. 2003).

After the notice period, the Administrator will review all claim forms to determine whether a claim is approved.[3] The Administrator will notify a claimant if his or her claim appears deficient. Upon notification, a Settlement Class member whose claim has been rejected may cure the deficiency in his or her claim within twenty (20) days of the Administrator providing notice of the deficiency. The Administrator will notify a claimant if his or her claim ultimately is rejected.

### 3. *The proposed attorney's fees.*

Under the Settlement Agreement, Defendants have agreed not to object to or oppose an application by Class Counsel for fees and expenses if the application does not exceed thirty-percent

---

[3] A copy of the proposed Claim Form is included in the Notice, attached as Exhibit 2.

(35%) ($1,295,000.00) of the "Total Settlement Value" of $3,700,000.00; a cap on the fees that Class Counsel may request without objection from Defendants. The attorneys' fee award is inclusive of expenses and costs incurred by counsel for Plaintiffs during the prosecution. The attorneys' fee award is scheduled to be distributed to Class Counsel within 30 days after the final approval of settlement – only after all payments to class members have been determined and any objections have been heard.

The Supreme Court has expressed a preference that parties agree to the fee: "A request for attorney's fees should not result in a second major litigation. Ideally, of course, litigants will settle the amount of a fee." *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983). Here, the parties have done so. When a settlement yields a common fund for class members, fees must be paid from recovery. *Boeing Co. v. Van Gemert*, 444 U.S 472, 481, 62 L. Ed. 2d 676, 100 S. Ct. 745 (1980). "In the Eight Circuit, use of a percentage method of awarding attorneys' fees in a common fund case is not only approved, but also well established." *In re Xcel Energy, Inc. Sec. Derivative & ERISA Litig.*, 364 F. Supp. 2d 980, 991 (D. Minn. 2005). Courts in this Circuit routinely approve and apply the "percentage-of-the-fund" approach in awarding attorneys' fees in common fund cases. *See, e.g., Johnson v. Comerica Mortg. Corp,* 83 F.3d 241, 245-7 (8th Cir. 1996) (approving the percentage method as one method of awarding fees); *Petrovic v. Amoco Oil Co.*, 200 F.3d 1140, 1157 (8th Cir. 1999); *In re U.S. Bancorp Litig.*, 291 F.3d 1035, 1038 (8th Cir. 2002); *In re Xcel Energy*, 364 F. Supp. 2d at 993.

As the Eighth Circuit has recognized, using a percent of the fund approach most closely aligns the interest of the lawyers with the class, since the more that is recovered for the class, the more attorneys stand to be paid. *See Johnston v. Comerica Mortgage Co.*, 83 F.3d 241, 244 (8th Cir. 1996) (noting that the percent of benefit approach has been recommended in common fund

situations); *see also In re Charter Communications, Inc. Securities Litig.*, No. MDL1506; 02-1186; 2005 WL 4045741 (E.D. Mo. June 30, 2005); *In re BankAmerica Corp. Securities Litig.*, 228 F. Supp. 2d 1061, 1064 (E.D. Mo. 2002).

The amount sought by Class Counsel is within the range approved by courts in the Eight Circuit and in Missouri; those courts "have frequently awarded attorney fees between twenty-five and thirty-six percent of a common fund in class actions." *Yarrington v. Solvay Pharm., Inc.*, 697 F. Supp. 2d 1057, 1064 (D. Minn. 2010) (*quoting In re U.S. Bancorp Litig.*, 291 F.3d 1035, 1038 (8th Cir. 2002) (affirming fee award representing 36% of the settlement fund as reasonable)); *In re Xcel*, 364 F. Supp. 2d at 998 (collecting cases demonstrating that district courts routinely approve fee awards between 25% and 36%).

Class Counsel took this case on a contingency basis, with the real possibility of an unsuccessful outcome and no fee of any kind. At the time of filing, there had been few if any cases filed using the theory of recovery alleged by Plaintiffs. When Plaintiffs filed their initial complaint in 2016, there was no indication that a settlement would be reached or that litigation would succeed. Class Counsel has continued to litigate this case and front all litigation expenses for almost four years.

Class Counsel is not seeking compensation outside of the legal fee for costs. Class Counsel expenses exceed $75,000.00. These costs were reasonable and necessary. It is appropriate and customary in class litigation for class counsel to be reimbursed for out-of-pocket litigation expenses from a common settlement fund. *See In re Giant Interactive Grp., Inc. Sec. Litig.*, 279

F.R.D. 151, 165 (S.D.N.Y. 2011) ("It is well established that counsel who create a common fund are entitled to the reimbursement of expenses that they advance to a class.").[4]

### 4. *The proposal treats class members equitably.*

The settlement treats Settlement Class members fairly and equitably. The proceeds shall be distributed to the Settlement Class on a pro rata basis, with 90% of the proceeds being allocated to Settlement Subclass A (up to a maximum amount of $10,000 per Settlement Class member) and 10% of the proceedings being allocated to Settlement Subclass B (up to a maximum amount of $10,000 per Settlement Class member). Settlement Class members may, if they meet the criteria, receive payments under both Settlement Subclass A and Settlement Subclass B.

### D. The Experience and Views of Counsel.

A court evaluating a proposed settlement "should keep in mind the unique ability of class and defense counsel to assess the potential risks and rewards of litigation; a presumption of fairness, adequacy and reasonableness may attach to a class settlement reached in arm's length negotiations between experienced, capable counsel after meaningful discovery." *In re BankAmerica Corp. Sec. Litig.*, 210 F.R.D. 694, 700 (E.D. Mo. 2002) (quoting Fed. Judicial Ctr., Manual for Complex Litig. § 30.42 at 240 (3d. ed. 1997)). Although the Court is not bound by counsel's opinion, their opinion nonetheless carries weight in assessing a settlement. *Sanderson v. Unilever Supply Chain, Inc.*, 10-cv-00775-FJG, 2011 WL 5822413, at *3-4 (W.D. Mo. Nov. 16, 2011) (crediting experienced class counsel's belief that the settlement was fair, reasonable, and adequate). Here, the Settlement Class

---

[4] *See also* 2 Joseph M. McLaughlin, MCLAUGHLIN ON CLASS ACTIONS, § 6:24 (8th ed. 2011) (noting that "class counsel also is entitled to reimbursement from the class recovery (without interest) for the costs and reasonable out-of-pocket expenses incurred in prosecuting the litigation"). Reimbursable expenses include costs incurred for legal research, photocopying, document production, travel, meals, lodging, postage, and expert witness services. *Hale v. Wal-Mart Stores, Inc.*, Nos. 01CV218710, 02CV227674, 2009 WL 2206963, ¶ 6 (Mo. Cir. Ct. Jackson Cty. May 15, 2009) (Midkiff, J.).

had the benefit of attorneys highly experienced in complex litigation and familiar with the facts and law, and have negotiated many class action settlements. In counsels' view, the settlement provides substantial benefits to the class, especially when one considers the attendant expense, risks, difficulties, delays and uncertainties of litigation, trial and post-trial proceedings. Further, in counsels' experience, when compared with similar litigation, the relief to the class is substantial.

### E. The Requested Service Awards Are Reasonable.

Plaintiffs seek a service payment for the named plaintiff and former named plaintiff who provided written discovery responses and/or deposition testimony. The total requested service award constitutes approximately 1% of the total Gross Settlement Fund (Johnson and Crane each receiving a service award of $25,000.00). Through the course of almost four years they participated in countless meetings with Plaintiffs' counsel, Johnson was deposed, and attended mediations in service to the rest of the class.

Compensation for named plaintiffs can be handled in two different ways. Generally they are referred to as the Bonus Method and the Preferential Treatment Method. While these two approaches are analytically distinct, courts rarely distinguish between them and typically rely on the same kinds of factors to evaluate and justify them.

Bonus Method

The first method is for named plaintiffs to receive a share of the monetary class fund like any other class member and then receive a separate cash bonus payment for serving as a named plaintiff. The Bonus Method analysis typically looks at the effort, risk and benefits to the class provided by the class representatives.

Preferential Treatment Method

The second approach – and the source of much confusion in the case law – is for the named plaintiffs to receive one payment under the terms of the class settlement that is greater than that

19

available to the ordinary class member. Under the latter method, the district court will analyze whether there is an adequate rationale for additional compensation to the named plaintiffs and consider the payment in light of the overall fairness of the settlement.

There is no consistent legal standard for the evaluation and approval of service awards. While the U.S. Supreme Court has never directly addressed service awards to named plaintiffs, federal case law highlights a number of factors which may be relevant to the inquiry. In *Cook v. Niedert*, 142 F.3d 1004 (7th Cir. 1998), the Seventh Circuit provided a list of some pertinent considerations:

> Because a named plaintiff is an essential ingredient of any class action, an service award is appropriate if it is necessary to induce an individual to participate in the suit. . . . In deciding whether such an award is warranted, relevant factors include the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, and the amount of time and effort the plaintiff expended in pursuing the litigation.

*Cook*, 142 F.3d at 1015 (citation omitted).

As another example, in *Van Vranken v. Atlantic Richfield*, 901 F. Supp. 294 (N.D. Cal. 1995), Judge Williams articulated a different list:

> The criteria courts may consider in determining whether to make an service award include: 1) the risk to the class representative in commencing suit, both financial and otherwise; 2) the notoriety and personal difficulties encountered by the class representative; 3) the amount of time and effort spent by the class representative; 4) the duration of the litigation and; 5) the personal benefit (or lack thereof) enjoyed by the class representative as a result of the litigation.

Id. at 300.

Most fundamentally, courts will evaluate named plaintiff awards by looking at the overall benefits of the settlement and by comparing the named plaintiffs' awards to the range of monetary recovery available to the class. *See e.g. Ingram v. Coca-Cola*, 200 F.R.D. 685, 694 (N.D. Ga. 2001); *Roberts v. Texaco*, 979 F. Supp. 185, 204 (S.D.N.Y. 1997); *Sheppard v. Consolidated*

20

Case 4:16-cv-00947-SRB   Document 268   Filed 07/31/20   Page 26 of 35

*Edison*, 2000 U.S. Dist. LEXIS 20629 at 16-17 (E.D.N.Y. 2000). The purpose of this inquiry is to ensure that special benefits to the class representatives have not compromised the adequacy of representation.

Apart from the proportionality inquiry, courts will evaluate what the named plaintiffs have done to earn the service award.

Many courts have focused on the need to encourage litigants to bring class litigation, which will further the public policy underlying the statutory scheme. *Thornton v. East Texas Motor Freight*, 497 F.2d 416, 420 (6th Cir. 1974) ("We also think that there is something to be said for rewarding those drivers who protect and help to bring rights to a group of employees who have been the victims of discrimination"); *Denney v. Jenkins & Gilchrist*, 2005 WL 388562 *31 (S.D.N.Y. 2005) ($10,000 award approved where class representatives were in a "position to capitalize on lawsuits already filed to attempt to get a full or at least far greater recovery for themselves"); *Roberts v. Texaco*, 979 F. Supp. 185, 201 n. 25 (S.D.N.Y. 1997); *In re Smithkline Beckman Corp. Securities Litig.*, 751 F. Supp. 525, (E.D.Pa. 1990) ($5000 award approved because named plaintiffs "rendered a public service" and "conferred a monetary benefit" on the shareholder class); *In re Jackson Lockdown/MCO Cases*, 107 F.R.D. 703, 710 (E.D. Mich. 1985) (prison litigation in which active protesters received larger award than passive participants).

The Parties have agreed to provide the Named Plaintiff David Johnson and former named Plaintiff Adam Crane as a whole service awards totaling approximately 1% of the Gross Settlement Fund. The reason for the service payments is to ensure that the individuals who chose to participate and provide invaluable information about the Defendants, their policies, procedures are compensated for the risk that they undertook in bringing this action. These individuals should be

rewarded to encourage them and others who would be subject to future violations to assert their clients' rights to privileged communications under state and federal law.

While firm estimates are unknown, the participants participated in numerous telephonic and in-person meetings, in some cases, court appearances, responding to written discovery, testimony at depositions, and represented various aspects of the classes' claims, from all class members nationwide, to individual state law subclasses. In light of the nominal percentage of the settlement fund that the monies represent, Plaintiffs respectfully request that the service awards be approved.

Additionally, Crane and Johnson took a risk by filing and attaching their names to the litigation. By lending their names to litigation they have risked reputation damage from third parties, including law enforcement agencies. In light of the small percentage of the settlement fund that the monies represent, Plaintiffs respectfully request that the service award be approved.

Because of the small percentage of the settlement fund that the monies represent, Plaintiffs respectfully request that the incentive awards be approved. Courts recognize that the risk, time, and dedication that an individual devotes to a lawsuit that inures to the common benefit of others warrants a service award above-and-beyond what other settling plaintiffs receive. *See Claxton v. Kum & Go, L.C.*, No. 16-3385, 2015 WL 3648776 at *2, 7 (W.D. Mo. June 11, 2015) (approving incentive award to named plaintiff in the amount of $14,145); *Johnson v. Casey's Marketing Co.*, No. 15-03086, 2015 WL 12806576 *1 (W.D.Mo. Dec. 12, 2015) (approving the terms of the Settlement agreement, including incentive award to named plaintiff in the amount of $7,500); *Hermsen v. City of Kansas City*, No. 11-753 at Doc. # 115 (W.D. Mo. Sept. 22, 2014) (approving service award to named plaintiff in the amount of $42,282.12, representing 3% of the common fund); *Tussey v. ABB, Inc.*, No. 06-04305, 2012 WL 5386033 (W.D. Mo. Nov. 2, 2012) (approving

$25,000 service awards for three class representatives); *Rawa v. Monsanto Co.*, No. 17-1252, 2018 WL 2389040 at *9 (E.D. Mo. May 25, 2018) (approving service awards of $10,000; $5,000 and $2,500). Given the importance of the assistance provided by Plaintiffs, these service awards are reasonable.

## VII.   CLASS CERTIFICATION FOR SETTLEMENT PURPOSES IS APPROPRIATE.

The second part of Rule 23(e)(1) requires the Court to determine that it is likely to certify the class for settlement. The Advisory Committee comment states:

> One key element is class certification. If the court has already certified a class, the only information ordinarily necessary is whether the proposed settlement calls for any change in the class certified, or of the claims, defenses, or issues regarding which certification was granted. But if a class has not been certified, the parties must ensure that the court has a basis for concluding that it likely will be able, after the final hearing, to certify the class. Although the standards for certification differ for settlement and litigation purposes, the court cannot make the decision regarding the prospects for certification without a suitable basis in the record. The ultimate decision to certify the class for purposes of settlement cannot be made until the hearing on final approval of the proposed settlement.

Rule 23 requires that an action satisfy the four prerequisites of Rule 23(a) and at least one provision of Rule 23(b). *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013). Under Rule 23(a), the proposed class must satisfy the requirements of numerosity, commonality, typicality, and fair and adequate representation. *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 613-14 (1997). And where, as here, Plaintiffs seek certification under Rule 23(b)(3), they must demonstrate that common questions of law or fact predominate over individual issues and that maintaining the suit as a class action is superior to other methods of adjudication. *See* Fed. R. Civ. P. 23(b)(3); *Amchem*, 521 U.S. at 615-16.

### A. Plaintiffs' Claims Satisfy Rule 23(a).[5]

#### 1. The Settlement Class satisfies numerosity.

Here, the proposed Settlement Class is sufficiently numerous. It includes hundreds of attorneys who meet the definitions of both Class Settlement Subclasses; the proposed Settlement Class easily satisfies the numerosity standard.

#### 2. Common issues of law or fact will govern the litigation.

Rule 23(a)(2) requires that "there are questions of law or fact common to the class." A plaintiff must show that the claims "depend upon a common contention' that 'is capable of class-wide resolution – which means that determination of its truth or facility will resolve an issue that is central to the validity of each one of the claims in one stroke.'" *Cromeans v. Morgan Keegan & Co.*, 303 F.R.D. 543, 552 (W.D. Mo. 2014) (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011)).

The settlement class satisfies Rule 23 (a)(2)'s commonality requirement. The central issue to every claim is whether Defendants intercepted, monitored, recorded, disclosed or used communications between Plaintiffs and their clients who were detained at Leavenworth Detention Center. As this Court ruled in its Order for class certification, there is one common legal question and its corresponding defense:

- Whether Defendants unlawfully intercepted confidential attorney-client conversations and whether either party to those conversations consented to recording. (Doc. #212 at page 16).

The foregoing question is common to the Settlement Class because it applies to all Settlement Class members.

---

[5] The Court Ordered class certification on September 18, 2018. (Doc. #212). In proposing a new Settlement Class and two subclasses, the parties did not disturb the previous analysis of the Court that resulted in the Order of class certification.

### 3. Plaintiffs' claims are typical.

Rule 23(a)(3) requires that the claims or defenses of the representative parties are typical of the claims or defenses of the class. "The burden of demonstrating typicality is fairly easily met, so long as other class members have claims similar to the named plaintiff." *Cope v. Let's Eat Out Inc.*, 319 F.R.D. 544, 555 (W.D. Mo. 2017) (citing *DeBoer v. Mellon Mort. Co.*, 64 F.3d 1171, 1174 (8th Cir. 1995)). "The claims of the entire class need not be identical, but the class representatives must generally possess the same interest and suffer the same injury as the unnamed class members." *Id.* (citations omitted). In assessing typicality, courts consider whether the named plaintiffs' claim "arising from the same event or course of conduct as the class claims, and gives rise to the same legal or remedial theory." *Alpern v. UtiliCorp United, Inc.*, 84 F.3d 1525, 1540 (8th Cir. 1996). Finally, "[t]ypicality will not be destroyed unless a class representative is subject to a unique defense that threatens to play a major role in the litigation." *Cromeans*, 303 F.R.D. at 552.

The typicality requirement is satisfied here because Plaintiffs assert the same claims individually that they assert on behalf of the Settlement Class. Each putative class representative is an attorney whose communications were intercepted, monitored, recorded, disclosed, or used by Defendants. Plaintiffs uniformly alleged communications were intercepted, monitored, recorded, disclosed, or used by Defendants. This applies equally across the board. The class representatives are not subject to a unique defense that could destroy typicality. Thus, Plaintiffs' claims are indistinguishable from those of the Settlement Class and they satisfy the typicality requirement.

### 4. Plaintiffs and Class Counsel are adequate.

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." This requirement "serves to uncover conflicts of interest between named parties and the class they seek to represent." *Amchem*, 521 U.S. at 625 (citation omitted). The focus

25

is on whether (1) the class representatives have common interests with class members, and (2) the class representatives will vigorously prosecute the interests of the other class members through qualified counsel. *Paxton v. Union Nat. Bank*, 688 F.2d 552, 562-63 (8th Cir. 1982).

Here, Plaintiffs have no interest antagonistic to, or conflicting with, the interests of the Settlement Class. But Plaintiffs' interests are coextensive of those of the proposed Settlement Class members in establishing liability and damages. Further, Plaintiffs have retained qualified attorneys experienced in class action litigation. Plaintiffs' counsel has prosecuted numerous class action lawsuits on behalf of thousands of individuals. Moreover, the class representatives and Class Counsel have demonstrated their service to the Settlement Class over the past three-plus years of prosecuting the classes' interests. Thus, Plaintiffs satisfy the adequacy requirement of Rule 23(a)(4).

### B. The Settlement Class Satisfies Rule 23(b)(3).

Rule 23(b)(3) requires that "questions of law or fact common to class members predominate over any questions affecting only individual members, and [that] a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Plaintiffs' proposed Class and Subclasses satisfy both the "predominance" and "superiority" requirements of Rule 23(b)(3).

#### 1. *Questions of law or fact predominate.*

"The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem*, 521 U.S. at 623. It does not require that each element of the plaintiffs' claims be susceptible to class-wide proof. *Amgen, Inc. v. Comm. Retirement Plans & Trust Funds*, 568 U.S. 455, 469 (2013). It also does not require that the common questions will be answered, "on the merits," in favor of the class. *Id*. at 459-60. Rather, when determining whether common questions predominate, the court asks whether, if the

plaintiff's general allegations are true, common evidence could suffice to make out a prima facie case for the class. *See Blades v. Monsanto Co.*, 400 F.3d 562, 566-67 (8th Cir. 2005). And, importantly, when there are issues common to the class that predominate, "the action may be considered proper under Rule 23(b)(3) even though other important matters will have to be tried separately, such as damages or some affirmative defenses peculiar to some individual class members." *Day v. Celadon Trucking Servs.*, Inc., 827 F. 3d 817, 833 (8th Cir. 2016) (citing *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016)).

In evaluating predominance, courts are mindful that "[p]redominance is a qualitative rather than a quantitative concept. It is not determined simply by counting noses: that is, determining whether there are more common issues or more individual issues, regardless of relative importance." *Parko v. Shell Oil Co.*, 739 F.3d 1083, 1085 (7th Cir. 2014) (internal citation omitted).

Common questions predominate in establishing Defendant's liability under Plaintiffs' claims. To prevail, Plaintiffs must establish communications were intercepted, monitored, recorded, disclosed, or used by Defendants. The answer to these questions will predominate over all other questions. The essential factual and legal issues regarding the Settlement Class members' claims are common, and relate to the alleged interception, monitoring, recording, disclosure or use by Defendants of communications by putative class members. Thus, any individual issues likely would not remain. However, even if any individual questions remained, they would be outweighed by the common questions.

### 2. The Settlement Class satisfies superiority.

Besides predominance, Rule 23(b)(3) requires that a class action be "superior to other available methods for fairly and efficiently adjudicating the controversy." The superiority analysis "requires the Court to determine whether the class action is manageable, taking into consideration choice of law determinations, notice to class members, etc." *Cope*, 319 F.R.D. at 557. However,

"dismissal for management reasons is never favored....[and] lack of manageability justifies denial of certification 'only where the attention and resources which would have to be devoted strictly to administrative matters will overwhelm any relief ultimately accruing to the plaintiff class.'" *Barfield v. Sho-Me Power Elec. Co-op.*, No. 11-04321, 2013 WL 3872181, at \*15 (W.D. Mo. July 25, 2013) (citations omitted).[6]

Consolidating all claims into a single litigation is in the best interest of the Settlement Class members and the court system. It would be judicially inefficient for these claims to be spread among multiple jurisdictions given that the same legal theories and evidence will be used by all Settlement Class members. And prosecuting the exact same claims across multiple jurisdictions risks creating inconsistent rulings on identical claims. It is, therefore, desirable to consolidate those claims in this Court. Class Counsel can present this case class-wide as efficiently as individually, and in less time than prosecuting multiple claims in different jurisdictions.

## VIII.  CONCLUSION

The settlement presented is an immediate, real, substantial, and fair settlement.  It achieves the goals, benefits the entire class and the public, and accounts for the risks and uncertainties of continued, vigorously contested litigation.  Plaintiffs, therefore, respectfully request that the Court approve the settlement as provided in Exhibit 1, in whole and without delay. Plaintiffs have submitted a proposed Order for the Court's consideration contemporaneous with this Motion.

---

[6] *See also Mullins v. Direct Digital, LLC*, 795 F.3d 654, 663 (7th Cir. 2015) (noting it is a "well-settled presumption" that "courts should not refuse to certify a class merely on the basis of manageability concerns") (citing cases).

DATED: July 31, 2020                    Respectfully submitted,

                                        /s/ *Michael A. Hodgson*
                                        Michael A. Hodgson, MO Bar #63677
                                        3609 SW Pryor Rd
                                        Lee's Summit, MO 64082
                                        Telephone:    (816) 600-0117
                                        mike@thehodgsonlawfirm.com

                                        /s/ *Lance D. Sandage*
                                        Lance D. Sandage, MO Bar #46022
                                        SANDAGE LAW LLC
                                        1600 Genessee Street, Suite 655
                                        Kansas City, MO 64102
                                        Tel: 816.753.0800
                                        Fax: 816.735.4602
                                        lance@sandagelaw.com

                                        /s/ *Joseph K. Eischens*
                                        Joseph K. Eischens, MO Bar #44706
                                        Law Office of Joseph K. Eischens
                                        8013 Park Ridge Dr.
                                        Parkville, MO 64152
                                        joe@jkmediation.com

                                        ***Counsel for Plaintiffs and the Proposed
                                        Settlement Class***

## CERTIFICATE OF SERVICE

I hereby certify that on this 31st day of July, 2020, the proceeding was filed using the Court

CM/ECF System, which will provide notice of the same to all counsel of record.

                                        /s/ *Michael Hodgson*
                                        Counsel for Plaintiffs