**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION**

| | | |
|---|---|---|
| DAVID JOHNSON, on behalf of himself and all others similarly situated, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No. 4:16-CV-00947-SRB |
| CORECIVIC, *et alia,* | ) ) | |
| Defendants. | ) ) | |

**PLAINTIFFS' UNOPPOSED[1] MOTION AND SUGGESTIONS IN SUPPORT OF
<u>FINAL SETTLEMENT APPROVAL</u>**

Respectfully submitted,

/s/ *Lance D. Sandage*
Lance D. Sandage, MO Bar #46022
SANDAGE LAW LLC
1600 Genessee Street, Suite 655
Kansas City, MO 64102
Tel: 816.753.0800
Fax: 816.735.4602
lance@sandagelaw.com

/s/ *Michael A. Hodgson*
Michael A. Hodgson, MO Bar #63677
3609 SW Pryor Rd
Lee's Summit, MO 64082
Telephone:     (816) 600-0117
mike@thehodgsonlawfirm.com

/s/ *Joseph K. Eischens*
Joseph K. Eischens, MO Bar #44706
Law Office of Joseph K. Eischens
8013 Park Ridge Dr.
Parkville, MO 64152
joe@jkmediation.com
***Counsel for Plaintiffs and
the Settlement Class***

---

[1] Defendant Securus has been provided a copy of this motion in advance of filing and advises that although it has not yet consented, upon its review Defendant Securus will file a statement of non-opposition.

# TABLE OF CONTENTS

I.    FACTUAL OVERVIEW ................................................................................1

    A.    THE SETTLEMENT ADMINISTRATOR EXECUTED THE COURT-APPROVED NOTICE PLAN .......2

    B.    THE SETTLEMENT CLASS RESPONDED FAVORABLY TO THE CLASS NOTICE PLAN AND

    SETTLEMENT ................................................................................................2

II.   LEGAL STANDARD ................................................................................3

III.  THE SETTLEMENT SATISFIES THE FACTORS IN RULE 23(E) ...........................5

    A.    THE CLASS REPRESENTATIVES AND CLASS COUNSEL HAVE ADEQUATELY REPRESENTED

    THE CLASS. ................................................................................................5

    B.    THE SETTLEMENT WAS NEGOTIATED AT ARM'S LENGTH. ...................................6

    C.    THE RELIEF PROVIDED FOR THE CLASS IS ADEQUATE. .......................................7

        *1.    The costs, risks, and delay of trial and appeal.* ...........................................7

        *2.    The effectiveness of administration.* ........................................................8

        *3.    The proposed attorneys' fees.* ................................................................9

    D.    THE PROPOSAL TREATS CLASS MEMBERS EQUITABLY. ....................................12

    E.    THE EXPERIENCE AND VIEWS OF COUNSEL FURTHER SUPPORT FINAL APPROVAL ............12

IV.   THE REQUESTED SERVICE AWARDS ARE REASONABLE. ...............................13

V.    NOTICE PROVIDED TO SETTLEMENT CLASS MEMBERS WAS THE BEST

PRACTICABLE AND SATISFIED DUE PROCESS. ............................................14

VI.   CONCLUSION ................................................................................15

<u>**TABLE OF AUTHORITIES**</u>

**Cases**

*Ashley v. Reg'l Transp. Dist.*, No. 05-01567, 2008 WL 384579 (D. Colo. Feb. 11, 2008) ............6

*Barfield v. Sho-Me Power Elec. Co. op.*, No. 11-CV-04321-NKL, 2013 WL 3872181 (W.D. Mo. July 25, 2013) ..................................................................................................................15

*Bellows v. NCO Fin. Sys., Inc.*, No. 3:07-cv-01413, 2008 WL 5458986 (S.D. Cal. Dec. 10, 2008) ................................................................................................................................4

*Boeing Co. v. Van Gemert*, 444 U.S 472, 62 L. Ed. 2d 676, 100 S. Ct. 745 (1980) ......................9

*Camden I Condominium Ass'n, Inc. v. Dunkle*, 946 F.2d 768 (11th Cir. 1991) ..........................10

*Casey v. Coventry Healthcare of Kansas, Inc.*, No. 08-00201-CV, 2012 WL 860395 (W.D. Mo. Mar. 13, 2012) ..........................................................................................................4

*Claxton v. Kum & Go, L.C.*, No. 16-3385, 2015 WL 3648776 (W.D. Mo. June 11, 2015)..........13

*Cohn v. Nelson*, 375 F. Supp. 2d 844 (E.D. Mo. 2005).................................................................3

*Evans & Green, LLP v. That's Great News, LLC*, 2012 WL 4888471 (W.D. Mo. Oct. 15, 2012) ..............................................................................................................................14

*Gaskill v. Gordon*, 160 F.3d 361 (7th Cir. 1998) .......................................................................10

*Hale v. Wal-Mart Stores, Inc.*, Nos. 01CV218710, 02CV227674, 2009 WL 2206963 (Mo. Cir. Ct. Jackson Cty. May 15, 2009) ............................................................................12

*Hensley v. Eckerhart*, 461 U.S. 424 (1983).................................................................................9

*Huyer v. Buckley*, 849 F.3d 395 (8th Cir. 2017)....................................................................10, 11

*In re BankAmerica Corp. Sec. Litig.*, 210 F.R.D. 694 (E.D. Mo. 2002) ......................................13

*In re BankAmerica Corp. Securities Litig.*, 228 F. Supp. 2d 1061 (E.D. Mo. 2002) ...................10

*In re Charter Communications, Inc. Securities Litig.*, No. MDL1506; 02-1186; 2005 WL
    4045741 (E.D. Mo. June 30, 2005) ...................................................................10, 11

*In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Products Liab. Litig.*, 55 F.3d 768 (3d Cir.
    1995)........................................................................................................................3

*In re Giant Interactive Grp., Inc. Sec. Litig.*, 279 F.R.D. 151 (S.D.N.Y. 2011) ..........................12

*In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283 (3rd Cir. 1998)10

*In re St. Paul Travelers Securities Litigation*, 2006 WL 1116118 (D. Minn. April 25, 2006) .....11

*In re Syngenta AG MIR 162 Corn Litig.*, 2019 WL 1274813 (D. Kan. Mar. 20, 2019) ..............11

*In re U.S. Bancorp Litig.*, 291 F.3d 1035 (8th Cir. 2002) ......................................................10, 11

*In re Uponor, Inc., F1807 Plumbing Fittings Products Liab. Litig.*, 716 F.3d 1057 (8th Cir.
    2013)........................................................................................................................3

*In re Xcel Energy, Inc. Sec. Derivative & ERISA Litig.*, 364 F. Supp. 2d 980 (D. Minn. 2005)
    ..............................................................................................................................9, 10

*Johnson v. Casey's Marketing Company*, No. 15-03086, 2015 WL 12806576 (W.D. Mo. Dec.
    12, 2015)...................................................................................................................13

*Johnston v. Comerica Mortgage, Co.*, 83 F.3d 241 (8th Cir. 1996)............................................10

*Little Rock Sch. Dist. v. Pulaski County Special Sch. Dist. No. 1*, 921 F.2d 1371 (8th Cir. 1990).3

*Marcus v. Kansas*, 2069 F. Supp. 2d 1179, 1182 (D. Kan. 2002)...................................................6

*Marshall v. Nat'l Football League*, 787 F.3d 502 (8th Cir. 2015).............................................3, 8

*Petrovic v. Amoco Oil Co.*, 200 F.3d 1140 (8th Cir. 1999)......................................................3, 10

*Phillips Petroleum Co. v. Shutts*, 472 U.S. 797 (1985) ...............................................................14

*Pollard v. Remington Arms Co., LLC*, 320 F.R.D. 198 (W.D. Mo. March 14, 2017) ................14

*Rawa v. Monsanto Co.*, 934 F.3d 862 (8th Cir. 2019) ................................................................11

Case 4:16-cv-00947-SRB   Document 273   Filed 12/04/20   Page 4 of 21

*Rawa v. Monsanto Co.*, No. 17-1252, 2018 WL 2389040 (E.D. Mo. May 25, 2018) .................13

*Rosenbaum v. MacAllister*, 64 F.3d 1439 (10th Cir. 1995) .......................................................10

*Sanderson v. Unilever Supply Chain, Inc.*, 10-cv-00775-FJG, 2011 WL 5822413 (W.D. Mo.

    Nov. 16, 2011) ........................................................................................................................13

*Stephens v. U.S. Airways Group, Inc.*, 102 F. Supp. 3d 222 (W.D. Mo. Nov. 16, 2011) ..............4

*Swedish Hospital Corp v. Shalala*, 1 F.3d 1261 (D.C. Cir. Aug. 10, 1993) .................................10

*Tussey v. ABB, Inc.*, No. 06-04305, 2012 WL 5386033 (W.D. Mo. Nov. 2, 2012) .....................13

*Yarrington v. Solvay Pharm., Inc.*, 697 F. Supp. 2d 1057 (D. Minn. 2010) .................................11

**Rules**

Fed. R. Civ. P. 30(b)(6) .................................................................................................................6

Rule 23 ............................................................................................................................................5

**Other Authorities**

2 Joseph M. McLaughlin, McLaughlin on Class Actions, § 6:24 (8th ed. 2011) ..................12

4 Alba Conte & Herbert Newberg, Newberg on Class Actions § 11.25, at 38-39 (4th ed.

    2002) ........................................................................................................................................4

4 Newberg on Class Actions § 11.41 ............................................................................................3

7B Fed. Prac. & Proc. Civ. § 1797.5 (3d. ed.) .............................................................................4

# I. FACTUAL OVERVIEW

The parties reached a class-wide settlement of the underlying litigation that achieves resolution of the claims alleged by the Plaintiffs and the Settlement Class Members[2] in this action. The settlement, as more specifically set forth in the Settlement Agreement submitted to the Court [Doc. # 268-1] (the "Settlement"), provides for resolution of Plaintiffs' and the Participating Settlement Class Members' claims and causes of action arising out of or relating to the interception, monitoring, recording, disclosure, and/or use of communications at the Leavenworth Detention Center in Leavenworth, Kansas ("LDC"). Plaintiffs previously submitted the Settlement for the Court's consideration and preliminary approval. *See* Plaintiffs' Unopposed Motion for Preliminary Settlement Approval [Doc. # 268] The Defendants, though denying all liability, did not oppose the Motion for Preliminary Approval.

On August 5, 2020, the Court issued its Order Granting Preliminary Approval of the Settlement [Doc. # 269]. In that Order, the Court preliminarily approved the Settlement, granted class certification for purposes of settlement only, appointed a Class Representative, appointed undersigned counsel as Class Counsel, and directed the parties to proceed with the approved Class Notice Plan, which the Court held provided "the best notice practicable under the circumstances, meets the requirements of federal law and due process, and constitutes due and sufficient notice…" *See* Order [Doc. # 269] at ¶ 9.

The Court will consider final approval of the Settlement at a hearing scheduled for December 9, 2020, at 10:00 a.m. in Kansas City, Missouri. In support of their request for the

---

[2] Unless otherwise stated, all capitalized terms used herein are given the meaning set out in the Settlement Agreement.

Court's final approval, Plaintiffs respectfully submit the instant Motion and accompanying Declarations.[3] Defendants do not oppose Plaintiffs' Motion.

## A.     The Settlement Administrator Executed the Court-Approved Notice Plan

After the Court's Preliminary Approval Order, Analytics Consulting LLC executed the Class Notice Plan approved by the Court. *See* Declaration of Jeffrey J. Mitchell on behalf of Analytics Consulting LLC, attached hereto as Exhibit 1 ("Analytics Declaration").

Analytics Consulting LLC carried out the Class Notice Plan and created a Settlement website, which contained copies of relevant case and settlement documents and information, including the Claim Form, the Long Form Class Notice approved by the Court, a Frequently Asked Questions section, key dates, instructions and deadlines for Settlement Class Members to submit claims, opt-out, or object to the Settlement, and the date and time of the Final Approval Hearing. The Settlement website also allowed for the direct electronic submission of claims by Settlement Class Members. Ex. 1 at ¶ 14.

Analytics Consulting LLC has verified that the Class Notice Plan was "timely implemented" between September 24, 2020 and November 23, 2020 Ex. 1 at ¶¶ 8, 12.

## B.     The Settlement Class Responded Favorably to the Class Notice Plan and Settlement

On September 24, 2020, Analytics Consulting LLC mailed by First Class Mail the Notice of Class Action Settlement and Claim Form to 3,285 Settlement Class Members. *See* Ex. 1 at ¶ 8. The Class Notice Plan generated over 415 responses, and of those 415 responses, 377 were Settlement Class Members who filed approved claims to participate in the cash proceeds of the

---

[3] As detailed further below and in its contemporaneously filed declaration, the Notice and Claims Administrator, Analytics Consulting LLC, completed its final accounting of Settlement Class member Claims on November 30, 2020. Accordingly, this Motion is ripe for final determination at the scheduled December 9, 2020 hearing.

Settlement.[4] *See* Ex. 1 at ¶¶ 12,13. Out of 415 affirmative responses to the Notice, only one individual excluded himself from the Settlement Class, and no Settlement Class Members submitted a valid objection to the Settlement[5]. *Id.* at ¶¶ 12, 13.

The Notice generated hundreds of responses, 377 valid claims, no formal objections, and only one request to be excluded. Through its actions, the Settlement Class has demonstrated the efficacy of the Notice and endorsed the sufficiency of the Settlement. The Court should grant final approval of the Settlement.

## II.    LEGAL STANDARD

"The law strongly favors settlements." *Little Rock Sch. Dist. v. Pulaski County Special Sch. Dist. No. 1*, 921 F.2d 1371, 1383 (8th Cir. 1990); *see also Petrovic v. Amoco Oil Co.*, 200 F.3d 1140, 1148 (8th Cir. 1999) ("A strong public policy favors [settlement] agreements, and courts should approach them with a presumption in their favor."). This preference is particularly strong "in class actions and other complex cases where substantial judicial resources can be conserved by avoiding formal litigation." *Cohn v. Nelson*, 375 F. Supp. 2d 844, 852 (E.D. Mo. 2005) (quoting *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Products Liab. Litig.*, 55 F.3d 768, 784 (3d Cir. 1995)).

Courts adhere to "an initial presumption of fairness when a proposed class settlement, which was negotiated at arm's length by counsel for the class, is presented for court approval." 4 Newberg on Class Actions § 11.41; *see also Marshall v. Nat'l Football League*, 787 F.3d 502, 508 (8th Cir. 2015) ("A Settlement agreement is 'presumptively valid.'") (quoting *In re Uponor, Inc.,*

---

[4] Approximately 40 claims were rejected by the Claims Administrator as duplicative or on other grounds which were not cured after opportunity to do so.

[5] The only Settlement Class Member to request to be excluded was Jonathan Sternberg. Mr. Sternberg assisted Plaintiffs and class counsel in the prosecution of the case including briefing the 23(f) appeal, and was thus excluded from the class definition, pursuant to the Complaint.

3

*F1807 Plumbing Fittings Products Liab. Litig.*, 716 F.3d 1057, 1063 (8th Cir. 2013)). Moreover, the judgment of class counsel in entering into a proposed class settlement is an important consideration. *Stephens v. U.S. Airways Group, Inc.*, 102 F. Supp. 3d 222, 229 (W.D. Mo. Nov. 16, 2011) (crediting the judgment of class counsel experienced in litigating and settling complex cases, including class actions, settlement was fair, reasonable, and adequate); *Bellows v. NCO Fin. Sys., Inc.,* No. 3:07-cv-01413, 2008 WL 5458986, *8 (S.D. Cal. Dec. 10, 2008) ("it is the considered judgment of experienced counsel that this settlement is fair, reasonable, and adequate settlement of the litigation, which should be given great weight.").

Approval of a Rule 23 class settlement involves a two-step process. MANUAL FOR COMPLEX LITIGATION, § 21.632 (4th ed. 2004); 4 Alba Conte & Herbert Newberg, NEWBERG ON CLASS ACTIONS § 11.25, at 38-39 (4th ed. 2002). The first step was completed when the Court granted preliminary approval of the Settlement and approved the Class Notice Plan. In the second and final step, the Court takes into consideration the notice provided to class members and any objections raised. 7B Fed. Prac. & Proc. Civ. § 1797.5 (3d. ed.). "Ultimately, the court must examine whether the interests of the class are better served by settlement than by further litigation." *Casey v. Coventry Healthcare of Kansas, Inc.*, No. 08-00201-CV, 2012 WL 860395, at *1 (W.D. Mo. Mar. 13, 2012).

In light of these considerations and the factors outlined herein, the Court should grant Plaintiffs' Motion and give its final approval to the Settlement.

## III.    THE SETTLEMENT SATISFIES THE FACTORS IN RULE 23(e)

Plaintiffs previously asserted that the Settlement satisfies the factors contained in Rule 23(e) and the Court agreed in its Order providing preliminary approval.[6] *See* Plaintiffs' Motion [Doc. # 268]; Order [Doc. # 269]. Nonetheless, Plaintiffs will briefly review those factors herein.

In evaluating the fairness of the settlement, courts consider the factors articulated in Rule 23(e)(2), which include whether:

> (A) the class representatives and class counsel have adequately represented the class;
> (B) the proposal was negotiated at arm's length;
> (C) the relief provided for the class is adequate, taking into account:
>> (i)     the costs, risks, and delay of trial and appeal;
>> (ii)    the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
>> (iii)   the terms of any proposed award of attorney's fees, including timing of payment; and
>> (iv)    any agreement required to be identified under Rule 23(e)(3); and
> (D) the proposal treats class members equitably relative to each other.[7]

According to the Advisory Committee notes: "The goal of this amendment is not to displace any factor, but rather to focus the court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal." 2018 Advisory Committee Notes.

### A.    The Class Representative and Class Counsel have adequately represented the Class.

The Class Representative and Class Counsel have adequately represented the Class since the litigation was commenced in 2016. Class Counsel have engaged in extensive litigation

---

[6] Plaintiffs incorporate herein their Unopposed Motion for Preliminary Settlement Approval [Doc. # 268] and its supporting exhibits.

[7] Regarding paragraph C(iv), there is no "agreement required to be identified under Rule 23(e)(3)." The Comment to Rule 23 contemplates that such agreements are those that "may have influenced the terms of the settlement . . ." Class Counsel can verify that there are no agreements affecting the settlement other than the parties' Settlement Agreement previously submitted to the Court.

including a 23(f) appeal to the United States Court of Appeals for the Eighth Circuit; these efforts involved complicated and nuanced questions of law and the scope of the applicable wiretap statutes. Class Counsel have vigorously pursued discovery, resulting in the production of thousands of documents by Defendants, and the deposition of corporate representatives under Fed. R. Civ. P. 30(b)(6). Class Counsel also have engaged with Plaintiffs in responding to discovery propounded by Defendants. Class Counsel have diligently prosecuted the litigation for over four years, and they have ably represented the Settlement Class's interests in the litigation.

### B.    The Settlement was Negotiated at Arm's Length.

The Settlement was fairly negotiated. "The fairness of the negotiating process is to be examined in the light of the experience of counsel, the vigor with which the case was prosecuted, and [any] coercion or collusion that may have marred the negotiations themselves." *Ashley v. Reg'l Transp. Dist.*, No. 05-01567, 2008 WL 384579, *5 (D. Colo. Feb. 11, 2008) (internal quotation omitted). "When a settlement is reached by experienced counsel after negotiations in an adversarial setting, there is an initial presumption that the settlement is fair and reasonable." *Marcus v. Kansas*, 2069 F. Supp. 2d 1179, 1182 (D. Kan. 2002).

After four-plus years of vigorous litigation, the Settlement was honestly and fairly negotiated by competent counsel with the assistance of a well-respected mediator. The parties engaged in an alternative dispute resolution mechanism, including an early neutral evaluation through the Western District of Missouri's Mediation Assessment Program ("MAP") performed by a private mediator in 2016 that did not result in a resolution. Only after additional, vigorous, and contested litigation did the parties agree to mediate the case twice with Hunter Hughes. And only then did the parties agree to settle after two lengthy mediations (that were still unsuccessful) and protracted continued negotiations that were facilitated by Hunter Hughes on two separate

6

occasions, and continued over numerous weeks following the second mediation. Under these circumstances, it cannot be questioned that the agreement was reached at arm's length.

### C. The Relief Provided for the Class is Adequate.

The Settlement provides significant relief to Settlement Class Members and compensates them fairly for their claims, particularly given these factors:

#### 1. *The costs, risks, and delay of trial and appeal.*

This case is complex and carries significant risks for the parties as to both legal and factual issues, and litigating the case to trial would likely consume great time and expense. If the Settlement is not approved, the remaining discovery, summary judgment, trial and appeal(s) would consume more time and resources, putting at risk any potential recovery for the Class or, at the very least, delaying any recovery.

The Settlement ensures that Participating Settlement Class Members who filed valid claim forms (i.e. Participating Claimants) will make a significant recovery. The Settlement provides monetary relief to Participating Claimants associated with the alleged improper interception, monitoring, recording, disclosure, and/or use of telephone conversations and in-person meetings between attorneys (Plaintiffs) and their clients (detainees) at LDC. And Participating Claimants will receive more than the estimated amounts that were included on the class Notices.

As described above, the Settlement Class's positive response to the Notice demonstrates their preference for a settlement in lieu of protracted litigation and trial. No Settlement Class Member formally objected to the Settlement and only one individual asked to be excluded from the Settlement Class, which, combined with the 377 valid claims submitted to obtain cash compensation, leads only to one reasonable inference: the Settlement Class endorses the Settlement and favors settlement compared to the prospect of continued litigation. *See, e.g.,*

7

*Marshall v. National Football League*, 787 F.3d 502, 513 (8th Cir. 2015) ("The fact that less than ten percent of the entire class opted out of the settlement . . . suggests it was favorable to what most members believed their claims worth."). In sum, the Settlement brings substantial monetary value to the Class now, rather than uncertain value to an uncertain number of people at an uncertain time after extensive litigation involving complex and changing law.

### 2. The effectiveness of administration.

The Court appointed Analytics Consulting LLC to serve as the Notice and Claims Administrator and there can be little doubt that Analytics Consulting LLC ably performed its obligations under the Settlement. Analytics Consulting LLC carried out its obligations to broadly disseminate Notice of the Settlement, diligently communicated with Settlement Class Members and counsel for the parties, and administered claims and other matters related to the Settlement. The Declaration of Jeffrey J. Mitchell reflects Analytics Consulting LLC's efforts and the effectiveness of those efforts. *See* Ex. 1.

Analytics Consulting LLC's robust efforts generated exactly the type of response the parties hoped to achieve and fulfilled Rule 23's due process goals of fairly apprising Settlement Class Members of a potential settlement and their rights thereunder. This Notice Plan is more than sufficient in a class action like the instant case.

Analytics Consulting LLC also has effectively administered the claims process for the benefit of the Settlement Class. Analytics Consulting LLC received and reviewed more than 400 Claim Forms, from which it identified and culled more than 35 duplicative claims. Ex. 1 at ¶¶ 12, 12. Through these efforts, Analytics Consulting LLC has ensured that the full extent of the monetary relief is reserved for the 377 non-duplicative, valid claims timely submitted by

8

Settlement Class Members. Ex. 1 at ¶¶ 19. Analytics Consulting LLC will make these payments to Participating Claimants within 30 days of the Effective Date of the Settlement Agreement.

Pursuant to the Settlement Agreement, all checks issued to Participating Claimants must be redeemed within 6 months of the issuance of the check. If any checks are not so redeemed, such amounts (and any other monies remaining in the settlement fund that cannot be evenly distributed to Participating Claimants) be paid equally to Legal Aid of Western Missouri and Kansas Legal Services, as *Cy Pres* recipients.

### 3. *The proposed attorneys' fees.*

Pursuant to the Settlement Agreement, Defendants have agreed not to object to or oppose an application by Class Counsel for fees and expenses as long as the application does not exceed thirty-percent (35%) of the total "Total Settlement Value" of $3.7 million as defined in the Settlement Agreement; in other words, a cap on the amount of fees that Class Counsel may request without objection from Defendants. Class counsel seeks 35% of the $3.7 million settlement value, or $1.295 million. As detailed above, Settlement Class Members were notified about this fee amount, and no Settlement Class Member objected to the proposed attorneys' fees.

The Supreme Court has expressed a preference that parties agree to the amount of the fee: "A request for attorney's fees should not result in a second major litigation. Ideally, of course, litigants will settle the amount of a fee." *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983).

Here, the parties have done so and they have agreed attorneys' fees should be paid from the common settlement fund. When a settlement yields a common fund for class members, fees must be paid from recovery. *Boeing Co. v. Van Gemert*, 444 U.S 472, 481, 62 L. Ed. 2d 676, 100 S. Ct. 745 (1980). "In the Eight Circuit, use of a percentage method of awarding attorneys' fees in a common fund case is not only approved, but also well established." *In re Xcel Energy, Inc. Sec.*

*Derivative & ERISA Litig.*, 364 F. Supp. 2d 980, 991 (D. Minn. 2005). Indeed, courts in this Circuit routinely approve and apply the "percentage-of-the-fund" approach in awarding attorneys' fees in common fund cases. *See, e.g., Johnson v. Comerica Mortg. Corp,* 83 F.3d 241, 245-7 (8th Cir. 1996) (approving the percentage method as one method of awarding fees); *Petrovic v. AMOCO Oil Co.*, 200 F.3d 1140, 1157 (8th Cir. 1999); *In re U.S. Bancorp Litig.*, 291 F.3d 1035, 1038 (8th Cir. 2002); *In re Xcel Energy*, 364 F. Supp. 2d at 1993.

As the Eighth Circuit has recognized, using a percentage of the fund approach most closely aligns the interest of the lawyers with the class, since the more that is recovered for the class, the more attorneys stand to be paid. *See Johnston v. Comerica Mortgage Co.*, 83 F.3d 241, 244 (8th Cir. 1996) (noting that the percent of benefit approach has been recommended in common fund situations); *see also In re Charter Communications, Inc. Securities Litig.*, No. MDL1506; 02-1186; 2005 WL 4045741 (E.D. Mo. June 30, 2005); *In re BankAmerica Corp. Securities Litig.*, 228 F. Supp. 2d 1061, 1064 (E.D. Mo. 2002).[8]

The amount sought by Class Counsel is well within the range approved by courts. The Eighth Circuit has "frequently awarded attorney fees up to 36% in class actions." *Huyer v. Buckley*, 849 F.3d 395, 399 (8th Cir. 2017). And other courts within the Eighth Circuit "have frequently awarded attorney fees between twenty-five and thirty-six percent of a common fund in class

---

[8] Other Circuits also express "a preference for the percentage of the fund method" in class actions. *Rosenbaum v. MacAllister*, 64 F.3d 1439, 1445 (10th Cir. 1995). *See also In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283, 333 (3rd Cir. 1998) ("[t]he percentage-of-recovery method is generally favored in cases involving a common fund"); *Gaskill v. Gordon*, 160 F.3d 361, 363 (7th Cir. 1998) (the percentage of the fund is "a method of more closely aligning the lawyer's interests with those of his client by giving him a stake in a successful outcome."); *Swedish Hospital Corp v. Shalala*, 1 F.3d 1261, 1271 (D.C. Cir. Aug. 10, 1993) ("concluding that a percentage-of-the-fund method is the appropriate mechanism for determining the attorney fee award in common fund cases" and that "a percentage of the fund approach more accurately reflects the economics of litigation practice … and most closely approximates the manner in which attorneys are compensated in the marketplace for these types of cases"); *Camden I Condominium Ass'n, Inc. v. Dunkle*, 946 F.2d 768, 774 (11th Cir. 1991) ("the percentage of the fund approach is the better reasoned in a common fund case").

actions." *Yarrington v. Solvay Pharm., Inc.*, 697 F. Supp. 2d 1057, 1064 (D. Minn. 2010) (*quoting In re U.S. Bancorp Litig.*, 291 F.3d 1035, 1038 (8th Cir. 2002) (affirming fee award representing 36% of the settlement fund as reasonable). And if the Court were inclined to conduct a lodestar crosscheck, Class Counsel's lodestar is within the accepted reasonable range because it is less than the percentage sought by counsel. Class Counsel is seeking $1,295,000.00 inclusive of fees and costs for their efforts pursuing this matter. The firms have a total of $1,404,779.15 in combined attorney time and hard expenses. *See* Exh. 2, Declarations of Michael Hodgson, Lance Sandage, and Joseph K. Eischens at 5, 9 (detailing the lodestar of Class Counsel).

In conducting a lodestar crosscheck, courts in the Eighth Circuit and in the Kansas City area routinely find lodestar multipliers up to 5-6 times counsel's lodestar to be reasonable. *See Rawa v. Monsanto Co.*, 934 F.3d 862, 870 (8th Cir. 2019) (affirming attorney's fees with a 5.3 times lodestar multiplier and noting such a range does "not exceed the bounds of reasonableness"); *Huyer v. Buckley*, 849 F.3d 395, 399–400 (8th Cir. 2017) (observing lodestar multipliers of up to 5.6 times class counsel's lodestar to be in the reasonable range for a lodestar crosscheck); *In re Syngenta AG MIR 162 Corn Litig.*, 2019 WL 1274813, at *5 (D. Kan. Mar. 20, 2019) (the court approved of multipliers of 2, 2.5, and 3 and stated that "a multiplier of 3 is well within the range allowed in other cases involving large settlements"); *In re St. Paul Travelers Securities Litigation*, 2006 WL 1116118, at *1 (D. Minn. April 25, 2006) (approving multiplier of 3.9); *In re Charter Communications, Inc.*, 2005 WL 4045741, at *18 (E.D. Mo. June 30, 2005) (approving multiplier of 5.6).

In this case, Class Counsel seeks fees in the amount of 35% of the stipulated "Total Settlement Value", or $1.295 million— well within the range frequently approved by the Eighth Circuit and other courts in this Circuit. In fact, Class counsel is seeking nearly the identical

percentage relative to their actual lodestar. In the Notice, Settlement Class Members were notified of this attorneys' fee request; no Settlement Class Member objected to the amount of the attorneys' fees. Class Counsel's proposed fee is reasonable in light of the work performed for the Class, and the Court should approve it.

Class Counsel is also seeking approval of no more than $74,000.00 for out-of-pocket expenses. These expenses were all necessary in the pursuit of this litigation and the results obtained. These costs were reasonable and necessary. The costs are included in the attorney fee request. It is appropriate and customary in class litigation for class counsel to be reimbursed for out-of-pocket litigation expenses from a common settlement fund. *See In re Giant Interactive Grp., Inc. Sec. Litig.*, 279 F.R.D. 151, 165 (S.D.N.Y. 2011) ("It is well established that counsel who create a common fund are entitled to the reimbursement of expenses that they advance to a class.").[9]

### D.    The Proposal Treats Class Members Equitably.

Settlement Class Members who submitted valid claims will be entitled to funds depending on whether the Participating Claimant falls into Class Settlement Subclass A, Class Settlement Subclass B, or both. No Settlement Class Members receive special treatment, except as specifically explained regarding "Service Awards" to Class Representatives who have participated in the case.

### E.    The Experience and Views of Counsel Further Support Final Approval.

A court evaluating a proposed settlement "should keep in mind the unique ability of class and defense counsel to assess the potential risks and rewards of litigation; a presumption of fairness, adequacy and reasonableness may attach to a class settlement reached in arm's length negotiations

---

[9] *See also* 2 Joseph M. McLaughlin, MCLAUGHLIN ON CLASS ACTIONS, § 6:24 (8th ed. 2011) (noting that "class counsel also is entitled to reimbursement from the class recovery (without interest) for the costs and reasonable out-of-pocket expenses incurred in prosecuting the litigation"). Reimbursable expenses include costs incurred for legal research, photocopying, document production, travel, meals, lodging, postage, and expert witness services. *Hale v. Wal-Mart Stores, Inc.*, Nos. 01CV218710, 02CV227674, 2009 WL 2206963, ¶ 6 (Mo. Cir. Ct. Jackson Cty. May 15, 2009) (Midkiff, J.).

between experienced, capable counsel after meaningful discovery." *In re BankAmerica Corp. Sec. Litig.*, 210 F.R.D. 694, 700 (E.D. Mo. 2002) (quoting Fed. Judicial Ctr., Manual for Complex Litig. § 30.42 at 240 (3d. ed. 1997)). Although the Court is not bound by counsel's opinion, their opinion nonetheless carries weight in assessing a settlement. *Sanderson v. Unilever Supply Chain, Inc.*, 10-cv-00775-FJG, 2011 WL 5822413, at \*3-4 (W.D. Mo. Nov. 16, 2011) (crediting experienced class counsel's belief that the settlement was fair, reasonable, and adequate). Here, the Settlement Class had the benefit of attorneys who are highly experienced in complex class actions litigation and familiar with the facts and law in the case, and who have negotiated many class action settlements. In counsels' view, the settlement provides substantial benefits to the Settlement Class, especially when one considers, among other things, the attendant expense, risks, difficulties, delays and uncertainties of litigation, trial and post-trial proceedings.

## IV.    THE REQUESTED SERVICE AWARDS ARE REASONABLE.

Courts recognize that the risk, time, and dedication that an individual devotes to a lawsuit that inures to the common benefit of others warrants a service award above and beyond what other settling plaintiffs receive. *See Claxton v. Kum & Go, L.C.*, No. 16-3385, 2015 WL 3648776 at \*2, 7 (W.D. Mo. June 11, 2015) (approving incentive award to named plaintiff in the amount of $14,145); *Johnson v. Casey's Marketing Company*, No. 15-03086, 2015 WL 12806576 \*1 (W.D. Mo. Dec. 12, 2015) (approving the terms of the Settlement agreement, including incentive award to named plaintiff in the amount of $7,500); *Hermsen v. City of Kansas City*, No. 11-753 at Doc. # 115 (W.D. Mo. Sept. 22, 2014) (approving service award to named plaintiff in the amount of $42,282.12, representing 3% of the common fund); *Tussey v. ABB, Inc.*, No. 06-04305, 2012 WL 5386033 (W.D. Mo. Nov. 2, 2012) (approving $25,000 service awards for three class representatives); *Rawa v. Monsanto Co.*, No. 17-1252, 2018 WL 2389040 at \*9 (E.D. Mo. May 25, 2018) (approving service awards of $10,000; $5,000 and $2,500).

13

In this case, Plaintiffs seek service payments for Class Representatives who have participated in the litigation, including Johnson being deposed and being available for mediations and settlement discussions, and both Johnson and Crane provided written discovery responses. The total requested service awards constitute slightly more than 1% of the agreed upon $3.7 million "Total Settlement Value" (again, the total value of the Settlement is much higher). The proposed amounts are as follows:

- $25,000 to named Plaintiff David Johnson; and

- $25,000 for previously-named Plaintiff Adam Crane.

In light of the small percentage of the settlement fund that the monies represent, Plaintiffs respectfully request that the incentive awards be approved. Again, the Notice apprised Settlement Class Members of the payment of incentive awards to Class Representatives; no one objected to the payments.

## V.  NOTICE PROVIDED TO SETTLEMENT CLASS MEMBERS WAS THE BEST PRACTICABLE AND SATISFIED DUE PROCESS.

"[T]he mechanics of the notice process are left to the discretion of the court subject only to the broad 'reasonableness' standards imposed by due process." *Evans & Green, LLP v. That's Great News, LLC*, 2012 WL 4888471 at *4 (W.D. Mo. Oct. 15, 2012) (citation omitted). "The United States Supreme Court has stated notice must 'apprise the interested parties of the pendency of the action and afford them an opportunity to present their objections.'" *Pollard v. Remington Arms Co., LLC*, 320 F.R.D. 198, 211 (W.D. Mo. March 14, 2017), aff'd, 896 F.3d 900 (8th Cir. 2018) (citation omitted). "[N]otice must be the best practicable, reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812 (1985) (internal quotations and citation omitted). "What constitutes the best notice practicable under the

circumstances depends on several factors, including the size of the class, whether the class members can be easily identified, and the probability that notice will reach the intended persons." *Barfield v. Sho-Me Power Elec. Co. op.*, No. 11-CV-04321-NKL, 2013 WL 3872181, at *13 (W.D. Mo. July 25, 2013) (citation omitted).

Here, the information provided in the Class Notice, including the Long Form Notice posted on the Settlement website, was sufficient to inform putative class members of their rights and obligations in the litigation, and it was broadly distributed through a robust mailing campaign specifically designed to reach Settlement Class Members. Ex. 1 at ¶¶ 7-11. The Class Notice Plan, as approved by the Court and as implemented by Analytics Consulting LLC, satisfied due process and was the best practicable notice under the circumstances here, where there were no records available to specifically identify all Settlement Class Members.

## VI. CONCLUSION

For the reasons set forth herein and after the hearing scheduled for December 9, 2020, Class Counsel respectfully request that the Court grant final approval of the Settlement and for any other relief this Court deems just and equitable.

DATED: December 4, 2020   Respectfully submitted,

        /s/ *Lance D. Sandage*
        Lance D. Sandage, MO Bar #46022
        SANDAGE LAW LLC
        1600 Genessee Street, Suite 655
        Kansas City, MO 64102
        Tel: 816.753.0800
        Fax: 816.735.4602
        lance@sandagelaw.com

/s/ *Michael A. Hodgson*
Michael A. Hodgson, MO Bar #63677
3609 SW Pryor Rd
Lee's Summit, MO 64082
Telephone:     (816) 600-0117
mike@thehodgsonlawfirm.com

/s/ *Joseph K. Eischens*
Joseph K. Eischens, MO Bar #44706
Law Office of Joseph K. Eischens
8013 Park Ridge Dr.
Parkville, MO 64152
joe@jkmediation.com

**Counsel for Plaintiffs and the Settlement Class**

## CERTIFICATE OF SERVICE

I hereby certify that on this 4th day of December 2020, the proceeding was filed using the

Court CM/ECF System, which will provide notice of the same to all counsel of record.

*/s/ Lance D. Sandage*
Counsel for Plaintiffs and the Settlement Class